## 23917

SOUTH CAROLINA CABLE TELEVISION ASSOCIATION, Appellant v. The PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, Southern Bell Telephone and Telegraph Company, SouthernNet of South Carolina, Inc., South Carolina Department of Consumer Affairs, MCI Telecommunications Corporation, AT&T Communications of the Southern States, Inc., Contel of South Carolina, GTE South, Inc., South Carolina Telephone Coalition, and United Telephone Company of The Carolinas, Inc., Respondents, and Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Respondent.

(437 S.E. (2d) 38)

Supreme Court

*B. Craig Collins* and *Mitchell Willoughby*, both of *Willoughby & Hoefer, P.A.*, Columbia, and *John D. Seiver*, and *Paul Glist*, of *Cole, Raywid & Braverman*, Washington, DC, *for appellant South Carolina Cable Television Ass'n.*

*Steven W. Hamm, Nancy Vaughn Coombs*, and *Elliott F. Elam, Jr.*, Columbia, *for appellant South Carolina Dept. of Consumer Affairs.*

*F. David Butler*, Columbia, *for respondent South Carolina Public Service Com'n.*

*Harry M. Lightsey, III, A. Camden Lewis*, of *Lewis, Babcock & Hawkins*, and *William F. Austin*, Columbia, *for respondent Southern Bell Tel. and Tel. Co.*

Heard May 18, 1993.

Decided Aug. 9, 1993.

FINNEY, Justice:

This is an appeal from an order of the circuit court affirming respondent Public Service Commission's (PSC's) order adopting an alternative regulatory rate-setting formula for local telephone companies (LECs). Appellants raise two issues on appeal: whether the PSC has the power and authority to

adopt this Earnings Sharing Plan (ESP); and whether the evidence before the PSC supports the ESP's adoption. Finding both a lack of authority and insufficient evidence, we reverse.

It is the PSC's statutory duty to set rates which are just and reasonable. S.C. Code Ann. § 58-9-210 (1976).

The just and reasonable rate is set by balancing the interests of the ratepayers and th right of the utility to earn a fair return. *Southern Bell v. Public Serv. Comm'n*, 270 S.C. 590, 244 S.E. (2d) 278 (1978); *see also* S.C. Code Ann. § 58-9-570 (1976). In South Carolina, rate making is based on historical data, with adjustments permitted for any *known* and *measurable out-of-period* changes such as the future effective date of a court ruling or the promulgation of not yet effective regulations. *Hamm v. Southern Bell*, 302 S.C. 132, 394 S.E. (2d) 311 (1990) (emphasis in original); *Southern Bell v. Public Serv. Comm'n, supra.*

Under the traditional rate-setting scheme, the PSC uses a formula which is designed to produce a specific rate of return for the LEC. A deviation from this set rate of return is the basis for requesting a new rate to be set.

In this generic proceeding, the PSC approved an alternative regulatory scheme for LECs. The ESP will be available to LECs at their discretion for a three-year trial period. Under this ESP, the PSC would establish a specific rate of return (the "benchmark") for each LEC. If earnings drop more than 100 points below the benchmark (the "floor"), then the LEC could apply for a rate increase. Any earnings up to 100 points above the benchmark ("threshold") will be kept by the LEC. Any earnings above the threshold (100 points) but below the ceiling (benchmark plus 250 points) will be divided equally between the LEC and its ratepayers. Earnings above the ceiling will be credited or refunded to the ratepayers.

An LEC opting-in to the ESP will have a separate hearing to establish its benchmark, and will have to file detailed reports during the three-year trial period. The PSC found this alternative methodology to traditional rate-setting was required because of increasing competition in the LEC market and the rapid technological advances in the field.

Appellants' challenge to the PSC's authority to adopt an ESP for LECs is based on three grounds. First, they assert adoption of a rate of return based on antici-

pated expenses and profits from future technological changes violates South Carolina's traditional requirement that rate-making be based on historical data, with allowances for known and quantifiable future changes. *Hamm v. Southern Bell, supra.* We agree. The ESP approved by the PSC would allow the adoption of a rate of return based largely on speculation rather than on historical data.

Appellants also contend the ESP's allowance of retained earnings between the floor and the threshold in effect allows the utility to earn a rate of return above that which is fair and reasonable, in violation of section 58-9-210. We agree. While we reject appellants' contention that the PSC may never approve a range of acceptable return for a utility, *see, e.g., Southern Bell v. Public Serv. Comm'n, supra,* the ESP adopted here establishes an irrebuttable presumption that a range is appropriate for every LEC, and that the same range is appropriate in every ESP. This type of blanket generalization is an abdication of the PSC's responsibility to set appropriate rates.

The policy expressed by the PSC in adopting the ESP is a desire to provide an incentive for LECs to adopt new technologies in order to remain competitive and to allow them to share in the profits generated by these improvements. Appellants point out there is a specific statute which allows a utility to share in "additional profits arising from any economy, efficiency or improvement in methods or service instituted by [a] telephone utility." S.C. Code Ann. § 58-9-330 (1976). Appellants contend, and we agree, this statute envisions that after a company has invested in improving its services and after it has begun profiting from these improvements, it may then ask the PSC to share in those profits. The ESP adopted here violates this statutory plan by allowing a LEC to retain pre-improvement profits, and concurrently earned profits, and not, as the statute envisions, allowing the LEC only to participate in after-the-fact profit sharing. The PSC possesses only the authority given it by the legislature. *See City of Camden v. Public Serv. Comm'n,* 283 S.C. 380, 323 S.E. (2d) 519 (1984). We hold that the PSC failed to act within its statutory mandate in adopting the ESP and therefore reverse the circuit court order upholding the PSC's authority to adopt this ESP.

Appellants also contend that, assuming the PSC were authorized to adopt this ESP, the evidence before the PSC was insufficient to support its conclusion that a change in the rate-making structure was necessary in order to permit LECs to become and remain competitive. While we need not reach this issue in light of our conclusion that the PSC lacks authority to adopt this ESP, we do so in light of the PSC's apparent confusion over when expert opinions need to be supported by underlying facts. *See Hamm v. Southern Bell, supra.* Here, the evidence relied upon by the PSC to support this radical change consists of the opinions of interested experts who testified that competition exists and therefore change is necessary. When asked to specify facts supporting this conclusion, the PSC pointed out that since 1984 it had issued over 700 Certificates of Need for services which could compete with those offered by LECs. The fact that one is authorized to compete is not evidence that it does, in fact, compete. We caution the PSC that its decisions must be based on facts in evidence and not merely on expert opinions which are not supported by facts. *Hamm v. Southern Bell, supra.*

The circuit court's order affirming the PSC's order is

Reversed.

HARWELL, C.J., CHANDLER and MOORE, JJ., and JASPER M. CURETON, Acting Associate Justice, concur.