515 S.E.2d 923

Philip S. PORTER, Consumer Advocate for
the State of South Carolina, Appellant,

v.

SOUTH CAROLINA PUBLIC SERVICE COMMISSION and
BellSouth Telecommunications, Inc., Respondents.

AT & T Communications of the Southern
States, Inc., Petitioner,

v.

Public Service Commission of South Carolina and BellSouth
Telecommunications, Inc., Respondents.

South Carolina Cable Television Association, Appellant,

v.

Public Service Commission of South Carolina and BellSouth
Telecommunications, Inc., d/b/a Southern Bell Telephone
and Telegraph Company, Respondents.

No. 24936.

Supreme Court of South Carolina.

Heard Oct. 7, 1998.

Decided April 19, 1999.

Rehearing Denied May 27, 1999.

158

Philip S. Porter, Nancy Vaughn Coombs, and Elliott F. Elam, Jr., of S.C. Dept. of Consumer Affairs, of Columbia, for appellant Consumer Advocate.

Frank R. Ellerbe, III, of Robinson, McFadden & Moore, of Columbia; and Christopher W. Savage, of Cole, Raywid & Braverman, of Washington, D.C., for appellant South Carolina Cable Television Association.

Caroline N. Watson, Robert A. Culpepper, and Harry M. Lightsey, III, of BellSouth Telecommunications, Inc.; William F. Austin, of Austin, Lewis & Rogers; Dwight F. Drake, of Nelson, Mullins, Riley & Scarborough; and Steven W. Hamm, of Richardson, Plowden, Carpenter & Robinson, all of Columbia; and John Hamilton Smith, of Charleston, for respondent BellSouth Telecommunications, Inc.

F. David Butler, of S.C. Public Service Commission, of Columbia, for respondent Public Service Commission.

MOORE, Acting Chief Justice:

This is a rate case. Respondent BellSouth Telecommunications, Inc. (Company) applied for approval of a proposed Consumer Price Protection Plan (the Plan) as an alternative means of regulation pursuant to S.C.Code Ann. § 58–9–575 (Supp.1997). Respondent South Carolina Public Service Commission (PSC) approved the Plan with some modifications. Appellants, the Consumer Advocate and South Carolina Cable Television Association, appealed to the circuit court claiming the Plan as approved did not meet the requirements of § 58–9–575. The circuit court affirmed. We reverse.

## FACTS

### Background

In response to increased competition and the availability of new technology in telephone services, Company has sought

alternatives to traditional regulation. In *South Carolina Cable Television Ass'n. v. Public Serv. Comm'n,* 313 S.C. 48, 437 S.E.2d 38 (1993), we considered an Earnings Sharing Plan that was approved by the PSC as an alternative to traditional rate-of-return regulation for local telephone companies. The Earnings Sharing Plan basically allowed a local exchange carrier to earn more than the traditional rate of return if it shared earnings over a certain benchmark with consumers. We reversed, finding the PSC had no statutory authority to adopt an alternative regulatory scheme.

Following the *Cable Television* decision, the legislature enacted § 58-9-575 which allows an exception to the rate-of-return regulation required under S.C.Code Ann. § 58-9-570 (1976). It provides in pertinent part:

**§ 58-9-575. Alternative means of regulating telephone utilities.**

(A) *Notwithstanding the provisions of section 58-9-570,* in fixing rates and charges for a local exchange telephone utility, the commission may, upon the request of the telephone utility or upon the commission's own motion, consider in lieu of the procedures provided in this chapter, alternative means of regulating the telephone utility. If the commission determines that a local exchange telephone utility is *subject to competition with respect to its services,* the commission may implement regulatory alternatives including, but not limited to, equitable sharing of earnings between a local exchange telephone utility and its customers, consistent with the provisions of section 58-9-330.

(B) The commission shall review and may authorize implementation of an alternative regulatory plan under subsection (A) if it finds after notice and hearing that the substantial evidence of record shows that the plan:

.    .    .    .    .

(6) includes effective safeguards to assure that rates for noncompetitive services do not subsidize the prices charged for competitive services. *In determining whether a service is competitive, the commission shall consider, at a minimum, the availability, market share, and price of comparable service alternatives;*

(7) assure that rates for *noncompetitive* services are just, reasonable, or not unduly discriminatory and provide a contribution to basic local telephone service....

(Emphasis added).

### The Plan

The Plan approved by the PSC in this case divides Company's services into three categories subject to separate price controls as follows:

1) *Basic services.* This category includes basic local exchange service to residential and small business customers. Prices charged are capped for five years then subject to controlled increases based on a specific formula related to an inflation-based index.

2) *Interconnection services.* This category includes services that allow other telecommunications providers to interconnect to Company's network to originate or terminate a call. Prices charged are capped for three years then subject to controlled increases based on a specific formula related to an inflation-based index.

3) *Non-basic services.* This category includes all other services. Prices charged are limited to an increase of 20% in a twelve-month period.

In addition to these category-specific pricing rules, one general pricing rule applies. All prices will equal or exceed Company's long-run incremental cost (LRIC) of providing the service except: 1) a service may be priced below LRIC in order to meet public interest goals such as universal service; or 2) the PSC may approve a price below LRIC for a particular service on a case-by-case basis.

Company concedes the Plan does not categorize services according to whether they are competitive or noncompetitive (monopoly) services, nor did the PSC make such findings before approving the Plan. Company claims its general pricing rule requiring all prices to equal or exceed LRIC assures there will be no cross-subsidization, therefore eliminating the need to divide services into competitive and noncompetitive categories.

## DISCUSSION

■ Appellants contend § 58–9–575(B) requires a division of services into competitive and noncompetitive in order to ensure prices for monopoly services do not subsidize prices for competitive services. We agree.

Subsection (B)(6) of § 58–9–575 authorizes the PSC to approve an alternative regulation plan if it:

includes effective safeguards to assure that rates for noncompetitive services do not subsidize the prices charged for competitive services. In determining whether a service is competitive, the commission shall consider, at a minimum, the availability, market share, and price of comparable service alternatives.

We find the underscored language of this subsection indicates the legislature's intent that the PSC control cross-subsidization by identifying which of the regulated company's services are competitive. Had the legislature intended to leave the means of assuring against cross-subsidization to the PSC's discretion, it would not have mandated consideration of minimum factors to identify a service as competitive. See Ballard v. Ballard, 314 S.C. 40, 443 S.E.2d 802 (1994) (Court is constrained to avoid construction that would read provision out of statute). While the Plan's pricing rules may in fact assure against cross-subsidization, without identifying which services are competitive and which noncompetitive, the Plan does not allow for the type of oversight envisioned by § 58–9–575.

Further, subsection (B)(7) requires that an alternative regulation plan:

assure[ ] that rates for *noncompetitive* services are just, reasonable, or not unduly discriminatory and provide a contribution to basic local telephone service.

Here the statute requires a distinct consideration of noncompetitive services which clearly cannot be accomplished without first identifying which services are noncompetitive.

■ The PSC found subsection (B)(7) was satisfied without identifying noncompetitive services because prices for *all* the services were just and reasonable. It based this conclusion on the fact that all current rates had been previously approved,

and these rates were subject to specific caps under the Plan and would be further monitored by the PSC. We question this assumption in light of the fact that prices for "non-basic" services, which perhaps include some noncompetitive services, are not capped at current rates but may increase up to 20% annually. If the PSC does not identify which services are noncompetitive, it cannot make a distinct determination that such an increase is appropriate for a noncompetitive service. Accordingly, the approved plan does not comply with subsection (B)(7) which requires a separate evaluation of noncompetitive services.

■ Appellants further contend the reference in (B)(7) to "just" and "reasonable" rates for noncompetitive services means the price for a noncompetitive service must be controlled by the traditional rate-of-return standard under S.C.Code Ann. § 58–9–570 (1976).[1] We disagree. Section 58–9–575 specifically exempts an alternative regulation plan from rate-of-return regulation under § 58–9–570.[2] The general reference in subsection (B)(7) to just and reasonable rates does not remove noncompetitive rates from this exemption but merely requires the PSC to exercise particular scrutiny of the rates for noncompetitive services.

Further, the main thrust of the legislature's concern expressed in § 58–9–575 regarding noncompetitive services is that they not subsidize competitive services. Requiring that noncompetitive services remain subject to rate-of-return regulation would not necessarily further this goal and would perhaps defeat the flexibility of an alternative regulation plan. Accordingly, we decline to adopt appellants' restrictive construction of (B)(7).

---

1. The term "just and reasonable" in rate cases originates from § 58–9–570 which provides: "In determining just, reasonable and sufficient rates the Commission shall give due consideration to [certain enumerated factors].... But the rates so fixed shall not be higher than necessary to give a fair return to the stockholders." *See also Cable Television,* 437 S.E.2d. at 39 ("The just and reasonable rate is set by balancing the interests of the ratepayers and the right of the utility to earn a fair return.").

2. Section 58–9–575 begins with the phrase, "Notwithstanding the provisions of § 58–9–570...."

■ Finally, appellants contend § 58–9–575(A) requires the PSC to identify Company's competitive services to determine if Company qualifies for an alternative regulation plan. We agree.

As a threshold condition for allowing an alternative regulation plan, subsection (A) of § 58–9–575 provides in pertinent part:

> If the commission determines that a local exchange telephone utility is *subject to competition with respect to its services,* the commission may implement regulatory alternatives. . . .

The PSC found Company was "subject to competition" based on Company witnesses who testified there was competition for several of the services provided by Company.

Appellants contend the phrase "subject to competition" must be read together with subsection (B)(6) which enumerates factors to determine what services are "competitive." They contend the PSC did not properly assess Company's qualification for an alternative regulation plan because it failed to identify competitive services based on the enumerated factors: availability, market share, and price of comparable service alternatives.

We agree with appellants an evaluation whether Company is "subject to competition" must be based on the enumerated factors. A plain reading of the phrase "subject to competition with respect to its services" indicates a company must have competitive services to qualify for alternative regulation. Competitive services, in turn, are defined by the enumerated factors in subsection (13)(6). Therefore, these enumerated factors must be applied in determining if Company is subject to competition under subsection (A). *See Wright v. Colleton County School Dist.,* 301 S.C. 282, 391 S.E.2d 564 (1990) (Court need not look beyond words of statute to discern legislative intent apparent on its face).

## CONCLUSION

■ The PSC possesses only the authority given it by the legislature. *Cable Television, supra.* Section 58–9–575 does not authorize the PSC to approve an alternative regulatory plan without identifying competitive and noncompetitive ser-

vices. Because the PSC failed to make the requisite findings regarding competitive and noncompetitive services, the circuit court order affirming the PSC's order is **REVERSED.**

WALLER, J., Acting Associate Justices JOHN L. BREE-DEN, Jr., JASPER M. CURETON, and GEORGE T. GREG-ORY, Jr.