**Lula B. BROOKS, and Lucille Hurt, Administratrices of the Estate of John C. Thomas, Deceased, Plaintiffs/Appellants,**

v.

**The MEMPHIS AND SHELBY COUNTY HOSPITAL AUTHORITY, and Sherry Kaye Rogers, and Susie Seiford, Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

June 10, 1986.

Jack B. Sellers of Jack B. Sellers Law Associates, Inc., Oklahoma, and Edith J. Sellers, Memphis, for plaintiffs/appellants.

Carroll C. Johnson, Memphis, for defendants/appellees.

TOMLIN, Presiding Judge.

This is an action for both personal injuries and wrongful death under the Governmental Tort Liability Act. Plaintiffs brought suit on behalf of their decedent, John C. Thomas, against the Memphis and Shelby County Hospital Authority, operators of the City of Memphis Hospital, and others (hereinafter "defendants"). They seek to recover damages for both personal injuries and the subsequent death of John C. Thomas, allegedly caused by employees of the defendant hospital in two separate accidents. By a subsequent order, Shelby County Government was substituted as a defendant in lieu of the Memphis and Shelby County Hospital Authority. The case was tried below without the intervention of a jury. Defendants admitted liability as to the accident that caused decedent's death, but denied liability or the existence of any negligence surrounding the prior accident that resulted in his injury. The trial court found that defendants were guilty of negligence that proximately caused decedent's injuries prior to his death, and that under the Governmental Tort Liability Act the court was limited to awarding damages for only "one accident," and proceeded to render judgment in favor of plaintiffs against all defendants for the sum of $20,000. Plaintiffs have appealed, contending that there were two separate accidents, thus two causes of action in favor of decedent's estate, and that the trial court erred in awarding damages for only one accident. Defendants raise as an issue the excessiveness of the judgment. For the reasons set forth hereafter, we reverse the trial court and remand for a hearing on damages.

The basic facts are not controverted. Plaintiffs' decedent, John C. Thomas, was a reasonably healthy ninety-four-year-old man. In January, 1978, he was admitted to defendant hospital as a patient for treatment of presumed pneumonia. At that time it was discovered that he had heart disease and a pacemaker was installed. He was discharged on medication in late January. On February 12, 1978, he was again admitted to the defendant hospital as a patient, complaining of chest and stomach pains, shortness of breath, and gastrointestinal bleeding. On February 20, 1978, while a patient of the hospital, an employee of defendant took Thomas on a stretcher to the x-ray department. Because of his condition, it was determined to be in decedent's best interest to x-ray him while on the stretcher rather than to stand him up. The stretcher did not have side rails but did have restraint straps for each leg and chest. All these straps were in place at the time Thomas was brought to x-ray.

It was necessary to remove the chest restraint strap to make the x-ray pictures. When the x-ray technician finished her work, she left Thomas unattended on the stretcher for a brief period of time with the leg straps in place and with the chest strap removed while she took the x-ray film to the processing room. Upon returning minutes later, she discovered that Thomas had rolled off the stretcher onto the floor. As a result of this fall, he suffered a fracture of his left hip which resulted in major surgery for the installation of a Jewett nail on February 22, 1978.

According to the treating doctor, Thomas came through the hip surgery well. Later that same day, because of his heart problem, another physician ordered a nurse employed by defendant hospital to administer 50 milligrams of Lidocaine to Thomas. In carrying out this order, she negligently administered the equivalent of a thousand milligrams of the medication. This overdose resulted in Thomas' death on March 1, 1978.

In their complaint, plaintiffs asserted a claim for damages for the personal injury—the broken hip resulting from the fall—and for Thomas' wrongful death resulting from the drug overdose. The trial court was of the opinion that Section 29–20–403(b), (c) restricted an award of damages in such a case to $20,000.

In announcing his opinion from the bench, the trial court stated in part as follows:

The theories relied upon by the Complaint on behalf of the Plaintiffs are two in number. The first being that the hospital, through its agents, servants and employees, were guilty of negligence in allowing the patient to be unattended to the point that he fell or rolled from the gurney, resulting in the fracture of his hip. The second theory of recovery is likewise negligence based upon the negligence in wrongfully administering the—an excessive dosage of Lidocaine bolus which resulted in the decedent's death.

With regard to the first count, the hospital denied that it was guilty of any negligence, denies that—while it admits that the patient did either roll off or turn off of the gurney resulting in a fracture to his hip, the hospital denies that it or through its agents, servants or employees do anything that was below the accepted standard of care of hospitals in this community and that their employees were not guilty of any negligence.

With regard to the second theory or count of the Plaintiff, in the administration of the drug, the hospital admits that its agents, servants, and employees in so administering the thousand milligrams of Lidocaine versus fifty milligrams as ordered by the treating physician, did constitute negligence, and that that act of negligence did proximately and directly result in the decedent's death.

So, those are the two theories and the contentions of the parties with regard to this case.

With regard to the first theory, while the Court is not absolutely convinced that this is the kind of case that it would even require expert testimony or would resolve upon whether or not the hospital deviated from or accepted the standard of care in the community. We certainly have it here, and Dr. Sabesim's deposition at page 59, he specifically states that in his opinion that to leave a 90 some odd year old patient on a gurney unattended without siderails, and this gurney it is admitted had no siderails at all, or without adequate or proper strapping to restrain the patient would, and he stated, be below the standard of accepted practice. So, whether expert testimony is or is not needed is resolved by the fact that we have it here, that there was a deviation from the standard of care in this community.

But, as I stated, I've got a serious question whether or not this is the kind of case that even would require expert testimony. It's more so a question of just common law negligence on whether or not they would be negligent to leave a 90 year old person lying on a bed or a stretcher or otherwise without any attendants. But in either event, whether testimony is required or not required, the Court has to find, based on the proof submitted, that this was—did constitute negligence, which negligence directly and proximately resulted in an injury to the Plaintiff.

So, with regard, then, to both issues, the one as found by the Court and the other admitted by the Defendant, the Court finds that this decedent died and was injured as a direct and proximate result of negligence on the part of the

Defendants. Therefore, we then come to the issue of damages.

Under T.C.A. 29–20–403, which sets the limits, Brother Sellers, the Court's got to take the position, as it previously did from reading this statute, that this act—that the legislature intended back in 1978 that the entire liability of the County for injuries arising out of the negligence or otherwise was to be limited to $20,000. And that's the only amount that the Court can give.

So, therefore, the Court will enter the judgment in favor of the Plaintiff against the Defendants in the sum of $20,000 and costs of the cause.

The Court finds that the $20,000 is the amount that it can award for either one or both of the injuries under the Act, and, therefore, will render a judgment in favor of the Plaintiffs against the Defendants on both theories for the sum of $20,000 and costs of the cause.

As can be seen from the above, the trial court found from the proof that plaintiffs' decedent was injured as a result of defendants' negligence, and based upon the admission of defendants, Thomas died also as a result of defendants' negligence. Inasmuch as defendants have not appealed from the finding of negligent injury of plaintiffs' decedent by the trial court, the question of negligence as to both events is deemed settled, and we shall direct our attention to the application of the pertinent provisions of the Governmental Tort Liability Act and that of damages.

T.C.A. § 29–20–311 reads as follows:

*Judgment over limits of insurance policy prohibited.*—No judgment or award rendered against a governmental entity may exceed the minimum amounts of insurance coverage for death, bodily injury and property damage liability specified in § 29–20–403, unless such governmental entity has secured insurance coverage in excess of said minimum requirements, in which event the judgment or award may not exceed the applicable limits provided in the insurance policy.

Section 29–20–403, referred to in the above-quoted Code section, reads in part as follows:

*Liability insurance authorized—Limits—Limits of liability for self-insuring entities.*—(a) Any governmental entity may purchase insurance to cover its liability under this chapter.

(b) Every policy or contract of insurance purchased by a governmental entity as authorized by this chapter shall provide:

(1) Minimum limits of not less than twenty thousand dollars ($20,000) for bodily injury or death of any one (1) person in any one (1) accident....

. . . .

(c) Any governmental entity electing to self-insure its liability shall have the same limits of liability as if insurance had been purchased.

In the case under consideration the defendant hospital is self-insured. We are thus concerned with the meaning and application of the following language from 29–20–403: "... limits of not less than twenty thousand dollars ($20,000) for bodily injury *or* death of any *one (1) person* in any *one (1) accident....*" (emphasis added).

As we construe it, plaintiffs have not asserted two "theories" of one cause of action but two separate and distinct causes of action. While their decedent was confined in the same hospital undergoing x-rays for a specific condition, he suffered an injury to his body through negligence of defendants' employees, the nature of which was totally unrelated to the condition for which he was being treated at the time. Some two days later he suffered another "injury"—the drug overdose—which killed him. The drug was given to treat a condition that was different, separate and apart from the injury sustained in the first negligent act. By statute, both injuries survive his death and are actionable. *See*, T.C.A. §§ 20–5–102 and 20–5–106.

## I.  ONE ACCIDENT OR TWO?

When the statute in question is dissected, we find it provides that a claimant may

recover up to $20,000 for either bodily injury or death as to a singular person "in any one accident." Defendant contends that the principle stated in *Revell v. McCaughan,* 162 Tenn. 532, 39 S.W.2d 269 (1931) is applicable here. It is therein stated that the original injury is regarded as the proximate cause of the damage following from the subsequent negligent treatment by the physician. In other words, defendants contend that all subsequent negligence flows from the fall off the stretcher. We are of the opinion that the line of cases relied upon by defendants is inapplicable to the case at bar. For instance, they cite Restatement of Torts Second concerning the principle of additional harm resulting from efforts to mitigate harm caused by the negligence. We do not construe the giving of the Lidocaine for the decedent's heart condition necessarily as an attempt to mitigate the harm done to him by permitting him to fall off the stretcher. Decedent had a heart condition prior to entering the hospital in February, 1978, and more logically this medicine was given to him in further treatment of that condition. The definition section of the Governmental Tort Liability Act, while containing many definitions, including a definition of "injury," does not contain a definition of "accident."

Under rules of statutory construction usually applied, the word "accident" should be given its normal and usual meaning. 43 Am.Jur.2d, *Insurance,* § 559 (1982) states it this way:

> The words "accident" and "accidental" have never acquired any technical significance in law, and when used in an insurance contract are to be construed according to the ordinary understanding and common usage and speech of people generally. In substance, the courts are practically agreed that the words "accident" and "accidental" mean that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen.

On the other hand, many courts have held that the use of the word "accident" or "occurrence" in a policy without giving a definition or other aid to help determine the sense in which the word is used gives rise to an ambiguity which should be construed against the insurer who wrote the policy. While we do not necessarily disagree with this principle, we do not apply it here.

In essence what we are called upon to do is to decide what constitutes "one" accident as though we were dealing with a liability policy limiting the insurer's liability to the specified amount of $20,000. A thorough and illuminating annotation on this subject is found in 55 A.L.R.2d beginning at page 1300. The writer tells us that the construction of these clauses has not lead to the same result:

> There is a conflict of authority which originates in what may be called a difference in the philosophical approach to the problem of causation. The majority of the courts take the viewpoint that the "per accident" clause is to be construed from the point of view of the cause of the accident rather than its effect. In some instances, however, the courts have adopted the viewpoint that the "per accident" clause is to be construed as referring to the result or effect of the accident on the persons injured or damages and not as referring to the cause of the accident.

*Id.* at 1302–03.

The writer continues to note that these two conflicting viewpoints are irreconcilable as far as legal theory is concerned.

The following test is suggested in the annotation as a reconciliation of the two divergent theories:

> If cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event, the courts have invariably found that a single accident within the meaning of the accident clause of the policy has occurred, while if enough time has elapsed between the injuries or damages to the various items involved or if the latter are widely separated in space, the courts have been inclined to allow separate claims even though they sprang from the same cause. Generally speak-

ing, it may therefore be stated that the aggregate of events resulting from insured's negligent act, such as several collisions, constitutes one accident, provided there is a close connection in time and place and a single sequence of cause and effect embracing the entire aggregate of events. If, on the other hand, the times or places and detailed causes of each instance of injury or damages are different they are separate accidents although each contains a common causal factor.

*Id.* at 1304.

The annotation places Tennessee in the category of construing "one accident" from the point of view of the persons injured rather than from the point of view of the proximate cause of the accident. This classification resulted from our Supreme Court's opinion in the case of *Kuhn's of Brownsville, Inc. v. Bituminous Casualty Co.*, 197 Tenn. 60, 270 S.W.2d 358 (1954). In *Kuhn's*, defendant had issued plaintiff a policy on two store buildings. Plaintiff undertook a remodeling of the premises in order to make one store out of the two existing buildings. It did excavation work under the buildings, including the removal of the wall between the two buildings. The excavation work done by plaintiff was completed prior to May 27, 1952, when the buildings being remodeled, along with a building on the east, collapsed. Two days later, on May 29th, the building immediately to the west of the insured premises also collapsed. No excavation took place between May 27th and May 29th. The excavation work of plaintiff was the proximate cause of both collapses.

Defendant contended that there had been only one accident, with separate items of damage resulting therefrom. Defendant admitted that plaintiff was obliged to pay the owners of the property destroyed or damaged by the May 27th collapse the sum of $14,800, and was obliged to pay the owners of the property damaged or destroyed by the May 29th collapse the sum of $28,900.

In affirming the trial court, which held that there were two separate unforeseen events, our Supreme Court stated:

The second question presents that matter of the amount of this liability. If the losses complained of by the complainant were for one accident, the liability would be $10,000, but if there were two separate accidents, then complainants would be entitled to recover twice the amount. The second collapse did not happen until two days after the first, and we think it clear that there were two accidents involved herein. If the excavation was a single act, and constitutes a single accident, then the question comes as to when the accident occurred. The owners on the west suffered no loss and experienced no unforeseen event until the 29th.

*Id.* at 360, 270 S.W.2d 358.

While the facts in the case at bar differ somewhat from *Kuhn's*, the differences tend to support rather than detract from the concept that there were two separate unforeseen events or accidents. In *Kuhn's*, there was a single act of negligence that caused separate damage to two separate property owners. In the case at bar, there were two separate and distinct acts of negligence by two different individuals that occurred on two different dates, albeit that the two negligent actors were employed by the same defendant hospital, and the acts of negligence were perpetrated on a single person rather than on two persons. In our opinion, the lapse of time between the two separate acts of negligence was so substantial, that in all probability the court could have reached the same result under the "cause of accident" theory.

We are of the opinion that there were two separate and distinct accidents, producing two separate and distinct causes of action, thus the maximum coverage available for defendants is $40,000. Inasmuch as this conclusion presents a totally different avenue of approach to the trial court, we find it unnecessary to pass upon the issue of excessiveness of damages raised by defendants. The judgment of the trial

court is reversed, and this cause is remanded to the Circuit Court of Shelby County for the reassessment of damages of the two distinct claims of plaintiffs in accordance with the principles laid down in this opinion. Costs in this cause are taxed to defendants, for which execution may issue, if necessary.

TOMLIN, P.J., HIGHERS, J., and McLEMORE, Special Judge, concur.