586 S.E.2d 115

Gaylan and Catherine **WILLIAMSON**, individually, and as Guardians ad Litem for Cody Williamson, a minor, Respondents,

v.

The **SOUTH CAROLINA INSURANCE RESERVE FUND** and the Spartanburg County Health Services District, Inc., Appellants.

No. 25709.

Supreme Court of South Carolina.

Heard June 26, 2002.

Decided Aug. 25, 2003.

Andrew F. Lindemann and William H. Davidson, II, of Davidson, Morrison and Lindemann, P.A., of Columbia, and William U. Gunn and Ginger D. Goforth, of Holcombe, Bomar, Gunn and Bradford, P.A., of Spartanburg, for Appellants.

Michael Parham and S. Blakely Smith, of Parham & Smith, LLC, of Greenville, for Respondents.

CHIEF JUSTICE TOAL:

This is an appeal from the circuit court. Respondents brought a declaratory judgment action to determine a number of issues involving interpretation of the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 through 200 ("TCA"). The trial court found that Respondents were entitled to collect the full $2.5 million in stipulated damages, and that the South Carolina Insurance Reserve Fund ("the Fund") was obligated, under the insurance policy it issued to Spartanburg County Health Services District, Inc., ("the District") to pay this entire amount. The Fund and the District appealed.

## FACTUAL/PROCEDURAL BACKGROUND

Gaylan and Catherine Williamson filed suit against the District on October 20, 1997, after Catherine gave birth to a son, Cody, on January 3, 1997. The Williamsons alleged two doctors employed by the District, Drs. Kiesau and Davis, had rendered negligent professional services during the child's delivery, as a proximate result of which, Cody was born with severe birth defects. The Williamsons brought two suits, one as guardians *ad litem* for Cody, and a second suit in their own right, seeking damages they had incurred and would incur in the future in caring for Cody. The District was defended in the suits by its liability insurance provider, the Fund.

The parties settled the underlying negligence suits. Cody's damages were stipulated to be $1.5 million, and the Williamsons' damages were set at $1 million. Pursuant to the settlement agreement, the Fund paid the Williamsons $1 million at the time of settlement, $800,000 to be applied to Cody's total damages of $1.5 million, and $200,000 to be applied to the Williamsons' $1 million damages. The settlement agreement contemplated that Respondents would subsequently file a declaratory judgment to determine:

(1) the District's total monetary liability under the TCA;

(2) whether the underlying acts of Drs. Kiesau and Davis constituted more than a single "occurrence" under the TCA;

(3) whether the liability limits contained in S.C.Code Ann. § 15–78–120 applied to Respondents' claims; and,

(4) whether the Fund was obligated to pay more than $1 million under the insurance policy.

The settlement further stipulated that the District's liability for damages would extend only to the limits of insurance coverage provided by the Fund. The parties agreed that resolution of the declaratory judgment action involved only questions of law, and each filed a motion for summary judgment. The trial court determined the statutory caps at S.C.Code Ann. § 15–78–120(a)(3) & (a)(4) (Supp.1996) applied to Respondents' causes of action. The court found further that the Williamsons' loss, as parents, was separately cognizable from Cody's loss. Thus, the Williamsons were entitled to recover a maximum of $1 million per occurrence, and Cody was entitled to a maximum recovery of $1 million per occurrence.

The trial court found that Respondents had established two separate "occurrences" for purposes of the TCA, one "occurrence" arising from Dr. Kiesau's negligence, and a second "occurrence", separate and apart from the first, arising from Dr. Davis's negligence.

Finally, the trial court determined that pursuant to S.C.Code Ann. § 15–78–140(a)[1] (effectively repealed on June 14, 1997), the State Budget and Control Board was obligated to provide insurance coverage, through the Fund, up to the amount of the District's liability regardless of any liability limits contained in the insurance policy, or the statutory caps.

The trial court's ruling permitted Respondents to recover from the Fund the entire amount of the stipulated damages of $2.5 million, or $1.5 million above that already paid pursuant to the settlement agreement.

With the exception of the trial court's determination that the monetary caps applied to Respondents' claims, Appellants challenge all of the holdings above. Respondents urge, *inter alia*, pursuant to Rule 220(c), SCACR, that we should affirm the judgment of the trial court because the caps do not apply to their claims. The following issues are before the Court:

---

1. That section provided: "It is the duty of the Budget and Control Board to cover risks for which immunity has been waived under the provisions of this chapter by the purchase of insurance as authorized in § 15–78–150." S.C.Code Ann. § 15–78–140(a) (Supp.1996).

*Respondent's Issue:*

 I. Did the trial court err in determining that the statutory caps apply to Respondents' claims?

*Appellants' Issues:*

 II. Did the trial court err in ruling that the child's claim for bodily injuries and the parents' claim for medical expenses entitled each party to an aggregate cap of $1 million per single occurrence?

 III. Did the trial court err in ruling the injuries and damages sustained by the Respondents were the result of two separate "occurrences"?

 IV. Did the trial court err in ruling that the Fund was obligated, under the insurance policy it issued to the District to pay the entire amount of the stipulated damages?

LAW/ANALYSIS

I. Statutory Caps

 Respondents argue, as an additional basis upon which to affirm the judgment below that the monetary caps contained in the TCA do not apply to their causes of action.[2] We agree.

---

**2.** At the time pertinent to this appeal, § 15–78–120(a)(3) & (a)(4) (Supp.1996) provided in relevant part:

 (a) For any action or claim for damages brought under the provisions of this chapter, the liability shall not exceed the following limits:

 . . .

 (3) No person may recover in any action or claim brought hereunder against any governmental entity and caused by the tort of any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, a sum exceeding one million dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

 (4) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

In *Southeastern Freight Lines v. City of Hartsville*, 313 S.C. 466, 443 S.E.2d 395 (1994), we held the Legislature's adoption of the Uniform Contribution Among Joint Tortfeasor's Act ("Uniform Contribution Act") impliedly repealed the statutory tort claims cap set forth in section 15–78–120(a)(1), which was adopted by the Legislature as part of the South Carolina Tort Claims Act in 1986. We recently recognized, in *Dykema v. Carolina Emergency Physicians*, 348 S.C.2d 549, 560 S.E.2d 894 (2002), that the statutory caps set forth in 15–78–120(a)(3) & (a)(4) were likewise impliedly repealed by adoption of the Uniform Contribution Act. Accordingly, the statutory caps of subsections (a)(3) & (a)(4) were repealed upon adoption of the Uniform Contribution Act, April 5, 1988. Although the Legislature reenacted the provisions of section 15–78–120(a)(1) with 1994 Acts No. 497, Part II, Section 107, this Act did not reenact subsections (a)(3) & (a)(4). *Dykema.*

In 1997, the Legislature enacted 1997 Act No. 155, Part II, § 55, in which it reenacted section 15–78–120, in toto. The reenactment of section 15–78–120 states that it takes effect upon approval by the Governor [June 14, 1997] and "applies to claims or actions **pending** on that date or thereafter **filed,** except where final judgment has been entered before that date." 1997 Act No. 155, Part II, § 55(F).

However, in *Steinke v. S.C. Dep't of Labor*, 336 S.C. 373, 520 S.E.2d 142 (1999), we addressed the Legislature's 1997 reenactment of section 15–78–120, and its attempt to reinstate the caps with respect to claims which were then pending. We held that "a judicial [interpretation] of a statute is determinative of its meaning and effect, and any subsequent legislative amendment to the contrary will only be effective from the date of its enactment and cannot be applied retroactively." 336 S.C. at 402, 520 S.E.2d at 157. Accordingly, we held the legislature could not retroactively reenact the caps to apply to claims **filed** prior to amendment. *Id. Steinke* went on to hold, however, that the Legislature was free to reinstate the statutory caps in **future cases.**

Although *Steinke* held the Legislature could not retroactively reinstate caps with respect to claims **filed** prior to June 14, 1997, it did not address whether such caps could be reinstated with respect to other "claims or actions pending." We finally

resolved this question in *Simmons v. Greenville Hospital System,* Op. No. 25708, 2003 WL 22004109 (S.C.Sup.Ct. filed August 25, 2003). In *Simmons,* the plaintiffs' cause of action **accrued** in 1992, prior to the effective date of both the 1994 and 1997 reenactments of the caps, but was not **filed** until after the respective effective dates in 1998. Because the caps were not in effect at the time the plaintiffs' claim **accrued,** we held that the Legislature could not "reach back and change the status" of plaintiffs' claims without violating the doctrine of separation of powers. *Id.* In short, we held that the "Legislature had authority to reinstate the caps, but it could only do so prospectively, with respect to those claims that **arose or accrued** after the effective date of the reenactments." *Id.*

Here, the negligent act or acts occurred on January 3, 1997, but both complaints (Cody's complaint and the Williamsons' complaint) were **filed** on October 20, 1997. The claims **arose or accrued** prior to the effective date of the 1997 Act that reenacted subsections (a)(3) & (a)(4) of § 15–78–120, but were not **filed** until after the effective date of the 1997 Act. As we determined in *Simmons,* the date of accrual is the determinative date. Both Cody's and the Williamsons' claims **arose or accrued** before the reinstatement of the caps within subsections (a)(3) & (a)(4) took effect. Therefore, neither party's recovery is limited by the caps within the TCA, and the District must pay the parties the remainder of the stipulated damages.

## II. Aggregate Cap

Appellants contend the trial court erred in holding that the Williamsons and Cody could each recover $1 million per occurrence. Based on our finding that the liability caps within § 15–78–120(a)(3) & (a)(4) are not applicable in this case, it is unnecessary to address this issue.

## III. Number of Occurrences

Appellants argue that the trial court erred in ruling the injuries and damages sustained by the Respondents were the result of two separate "occurrences". Our finding that § 15–78–120(a)(3) & (a)(4) has no application to this case makes it unnecessary for us to address this issue also.

## IV. The Fund's Obligation

■ Appellants assert that the trial court erred in holding the Fund must provide the District with coverage in excess of $1 million per occurrence. We disagree.

The "insuring agreement" portion of the contract of insurance between the District and the Fund provides,

The Fund will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of an occurrence which results in Injury to any person.

In addition, the policy contained a section entitled "Limits of Liability" which read as follows:

(1) Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain Injury, or (3) claims made or suits brought on account of Injury the Fund's liability is limited as follows.

(2) The total liability of the Fund for all damages as the result of any Occurrence including damages for care and loss of services, because of Injury sustained by one or more persons or organizations, shall not exceed the limit of liability stated in the declarations as applicable to "each Occurrence." The limits under Coverage "A" and Coverage "B" are separate limits and under no circumstances would both limits apply to one Occurrence.

(3) For any action or claim brought under [the Act], the liability of the Fund shall not exceed the following limits:

Coverage A

(a) No person shall recover in any action or claim a sum exceeding 250,000 dollars because of a loss arising from a single Occurrence regardless of the number of agencies or political subdivisions involved.

(b) The total sum recovered arising out of a single Occurrence shall not exceed 500,000 dollars regardless of the number of agencies involved.

Coverage B

(a) No person may recover in any action or claim brought hereunder against any governmental entity and caused by the tort of any licensed physician or dentist, employed by a governmental entity and act-

ing within the scope of his profession, a sum exceeding one million dollars because of loss arising from a single Occurrence regardless of the number of agencies or political subdivisions involved.

(b) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

(emphasis added). Despite these liability limits in the policy, the trial court held that the Fund was obligated to provide coverage to the extent of the stipulated damages. According to the trial court, § 15–78140 (Supp.1996) mandated this result.

Section 15–78–140(a) provides,

It is the duty of the Budget and Control Board to cover risks for which immunity has been waived under the provisions of this chapter by the purchase of insurance as authorized in § 15–78–150.

S.C.Code Ann. § 15–78–140(a) (Supp.1996). This provision establishes a duty for the Budget and Control Board to purchase insurance against risks for which immunity has been waived. As discussed in Part I of this opinion, the TCA waived this state's immunity up to the monetary limits defined in § 15–78–120. The limits of liability language within the insurance policy was taken verbatim from § 15–78–120. However, on the date the present action accrued in January 1997, the liability limits within subsections (a)(3) & (a)(4) were effectively repealed and had yet to be reinstated by the 1997 Act. *See* Part I, *infra; Dykema; Steinke.*

Accordingly, there was no limit on the District's liability for the negligence of one of its physicians on the date this claim **arose or accrued,** and the District is legally obligated to compensate Cody and the Williamsons for their stipulated damages. In turn, the Budget and Control Board was obligated to insure against risks for which liability had been waived. This statutory duty, reiterated within the policy's promise "to

pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages," obligates the Fund to cover the total amount of the stipulated damages against the District.

## CONCLUSION

For the foregoing reasons, we **AFFIRM IN PART AND REVERSE IN PART.**

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.