**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1241**

———————

THE CINCINNATI INSURANCE COMPANY,

Plaintiff - Appellant,

versus

URGENT CARE PHARMACY INCORPORATED; W. RAY
BURNS; R. KEN MASON, JR.; G. DAVID SCYSTER, as
Administrator of the Estate of Mary Virginia
Scyster and Individually Estate of Mary
Virginia Scyster; VIRGINIA RAUCH; VIVIAN
CONRAD; DONALD M. BOLES; ANNIE MCGILL; DANIEL
W. BOWMAN; JAMES HICKMAN; SHIRLEY KUS; DEBORAH
J. HENSLEY; ROBERT CONRAD, individually and as
Administrator for the Estate of Vivian Conrad,

Defendants - Appellees.

-------------------------------------------------

SOUTH CAROLINA STATE BOARD OF PHARMACY,

Movant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Spartanburg. Henry M. Herlong, Jr., District
Judge. (7:04-cv-01057-HMH)

———————

Argued: January 30, 2007          Decided: May 7, 2007

———————

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

———————

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Mark S. Barrow, SWEENY, WINGATE & BARROW, P.A., Columbia, South Carolina, for Appellant. James B. Maxwell, MAXWELL, FREEMAN & BOWMAN, P.A., Durham, North Carolina; William Marvin Grant, Jr., GRANT & LEATHERWOOD, P.A., Greenville, South Carolina, for Appellees. **ON BRIEF:** Martin S. Driggers, Jr., SWEENY, WINGATE & BARROW, P.A., Columbia, South Carolina, for Appellant. Joe McLeod, THE MCLEOD LAW FIRM, Fayetteville, North Carolina, for Appellee Virginia Rauch; H. Forest Horne, Jr., MICHAELS, JONES, MARTIN, PARRIS & TESSNER, Raleigh, North Carolina, for Appellee Robert Conrad.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Cincinnati Insurance Company ("Cincinnati") appeals the district court's grant of summary judgment to Urgent Care Pharmacy and other appellees (collectively "Appellees") on the issues of (1) whether Urgent Care's business liability policy included professional liability coverage in a "missing endorsement" or otherwise; (2) whether this coverage was unlimited; and (3) whether an exclusion in the policy precludes coverage in this case. The district court granted summary judgment in Appellees' favor on all issues, finding that the professional liability coverage was included in a "missing endorsement," was without liability limits, and that no exclusion applied to preclude coverage. For the reasons that follow, we reverse, holding that summary judgment was inappropriate because there is a genuine issue of material fact as to whether professional liability coverage was included in a "missing endorsement" or elsewhere in the policy. Therefore, we remand for further proceedings consistent with this opinion.

I.

As is required upon review of a grant of summary judgment, we view all disputed facts in the light most favorable to Cincinnati and draw all reasonable inferences in its favor. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 438 (4th Cir. 1998).

3

A.  The Drug

In 2002, Urgent Care Pharmacy, Inc. ("Urgent Care") was a compounding pharmacy in Spartanburg, South Carolina.  A compounding pharmacy has the capability to produce drugs from raw ingredients.  Urgent Care compounded a variety of different drugs for sale to hospitals, physicians, and individuals with a prescription.  One of the drugs compounded by Urgent Care was methylprednisolone acetate (the "Drug"), also known by the trade name Depo-Medrol.  The Drug is an injectable steroid used by anesthesiologists to treat severe back and joint pain.  When the Drug's commercial manufacturers decided to stop producing it, compounding pharmacies like Urgent Care stepped forward to fill requests from physicians and hospitals for the Drug.

In mid-2002, Urgent Care received requests for the Drug from several anesthesiologists and medical facilities in North and South Carolina, including the Johnston Pain Clinic and the pain clinic at Moore Regional Medical Center.  Some of the Drug compounded at Urgent Care and sold to these two clinics was contaminated by a fungus.  The contaminated samples were administered to several patients at these clinics, who subsequently contracted meningitis from the fungus.  The affected patients and decedents are, along with Urgent Care, Appellees in this case.  After the contamination was discovered, the South Carolina Board of Pharmacy investigated

4

Urgent Care, issuing a cease-and-desist order on September 27, 2002, which resulted in Urgent Care's closure.

## B.  The Policy

Urgent Care purchased a Businessowner's Policy ("Policy") from Cincinnati for the policy period of November 21, 1999 to November 21, 2002.  Urgent Care paid a yearly premium of $713 for the Policy.  The Policy provides two categories of coverage: business liability  and property liability.  Urgent Care also opted for "professional liability" coverage by checking a box on the Policy's declarations page indicating "Professional Liability - Per Attached Form."  J.A. 31.  What "Attached Form" means is a point the parties dispute.  Cincinnati argues that the "Attached Form" is the substantive portion of the Policy, which is found in the record. See J.A. 33-87.  The district court agreed with Appellees that "Attached Form" refers to a separate, "missing endorsement" setting out the parameters of the professional liability coverage.  The Policy also provides a coverage limit of one million dollars per occurrence for business liability.  It is disputed whether the coverage limits in the Policy apply to the professional liability coverage as well as other business liability.  The Policy also contains an exclusion, "Exclusion j," that denies coverage if the injury is caused by "products manufactured or compounded in bulk for sale by the insured to others." J.A. 60.

5

While several lawsuits have emerged from the sale of the contaminated samples, the litigation underlying this particular appeal arose when Cincinnati filed a declaratory judgment action in April 5, 2004 seeking an order that it has no duty to defend Urgent Care or to provide it coverage in connection with the patients' claims against Urgent Care. Appellees filed cross-motions for summary judgment on three separate issues in August and September 2005. The parties sought judgment as to (1) whether the Policy provided coverage for liability arising from the sale of the Drug; (2) whether the coverage was unlimited; and (3) whether "Exclusion j" of the Policy excludes coverage because Urgent Care illegally "manufactured" the Drug.

On the issue of whether the Policy covered Urgent Care's sale of the drug, the district court found that there was a "missing endorsement" to the Policy in which professional liability coverage was outlined. The court based its subsequent conclusions on this finding. With respect to the second issue, the court held that under South Carolina law, it was proper to infer unlimited coverage because the professional liability endorsement was missing and "nowhere in the Policy are professional liability limits contemplated." Cincinnati Ins. Co. v. Urgent Care Pharm., Inc., 413 F. Supp. 2d 644, 651 (D.S.C. 2006). With respect to the third issue, it found that "Exclusion j," which excludes the pharmacy from coverage if it was illegally manufacturing a drug or

6

compounding it in bulk, did not apply to preclude coverage here. Reasoning that because professional liability was outlined in a missing endorsement, the district court found that the Policy was at least ambiguous as to the applicability of "Exclusion j," the district court theorized "two reasonable interpretations:" (1) that the exclusion applied only to business liability coverage and (2) that the exclusion covers professional liability coverage. Id. at 649. It chose the first interpretation because under South Carolina law, the court is required to adopt the policy construction most favorable to the insured. Id. (citing Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990). Given its interpretation, the district court did not assess whether Urgent Care's activities constituted "manufacturing" or "compounding in bulk" under the exclusion. The district court awarded summary judgment to Appellees on all three issues on February 7, 2006, and it is Cincinnati's appeal from this order that is now before us.

II.

Cincinnati argues that summary judgment was improper on all issues. Cincinnati does not dispute the existence of professional liability coverage: rather, it argues that the district court erred in finding that the professional liability coverage was outlined in a "missing endorsement" to the Policy. Because we find there to be

7

a genuine issue of material fact as to whether professional liability coverage was delineated in a "missing endorsement" or in the Policy itself, we hold that summary judgment on this issue was improper. Because the district court's finding on the other issues was based in part on its reliance on the existence of a missing endorsement, we need not reach the merits of the remaining issues in order to reverse.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence of the non-moving party must be accepted as true and all justifiable inferences must be drawn in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court reviews a grant of summary judgment de novo. Med. Waste Assocs. v. Mayor of Baltimore, 966 F.2d 148, 150 (4th Cir. 1992).

A.

We turn first to whether summary judgment was appropriate on the issue of professional liability coverage in the Policy. Importantly, Cincinnati does not contest that some professional liability coverage was provided to Urgent Care under the Policy.

8

It is the location of this coverage, and the provisions that are applicable to it, that is at the heart of this case.

A typical insurance contract for a business is divided into two broad categories: property and business liabilities. See 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Ins. Coverage Disputes, § 10.06(a), at 778 (13th ed. 2006)[*]. A property liability policy covers losses incurred by the insured as a result of damage to the policy owner or damage to property the insured owns or leases. Id. A business liability policy covers injury to a third party. Id. Professional liability coverage is typically excluded from business liability coverage unless the policy holder elects this coverage. See id. at § 7.02 (b)(6) ("[M]any . . . policies contain a 'professional services exclusion, which generally excludes coverage for 'property damage or personal injury arising out of the rendering of or the failure to render any professional services.") (internal quotations omitted). If professional liability coverage is elected, insurance contracts vary as to how this coverage is outlined. The professional liability coverage can be offered in a separate policy, in an endorsement to an existing business liability policy, or within the business liability policy itself. See, e.g. Stoudt v. Harleysville Ins. Co., 17 Pa. D. & C. 4th 257 (C.P. Mercer County 1992) (within

---

[*]This explanation occurs within the context of a discussion of environmental liability but provides a helpful discussion of the basic organization of insurance coverage for businesses.

9

separate policy); <u>Houg v. State Farm Fire & Casualty Co.</u>, 481 N.W.2d 393, 396 (Minn. Ct. App. 1992) (within business liability policy). No matter the structure, in South Carolina, contracts of insurance are subject to the general rules of contract construction. <u>Stewart v. State Farm Mut. Auto. Ins. Co.</u>, 533 S.E.2d 597, 601 (S.C. Ct. App. 2000).

Here, all parties agree that Urgent Care elected professional liability coverage and that the Policy offers such coverage. Cincinnati admits that professional liability was covered under the Policy: its reply below states that "[t]he allegation . . . is admitted to the extent that [it] alleges that the Businessowners' policy issued to Urgent Care Pharmacy included, as an integral part of the policy, professional liability coverage." J.A. 111. Urgent Care elected coverage on the declarations page of the policy by checking a box indicating that it desired additional coverage for professional liability. The box that Urgent Care checked, indicating professional liability coverage, stated "Professional Liability--Per Attached Form." J.A. 31.

What Cincinnati disputes is the district court's conclusion that the optional professional liability coverage--the "Attached Form"--was found in a separate endorsement that is apparently missing from the record. The district court based this conclusion on the fact that the language of the Policy referred generally to business liability and not professional liability. <u>See</u> <u>Cincinnati</u>,

10

413 F. Supp. 2d at 649. Cincinnati argues that form IB 101 03 99, J.A. 33-87, is the "Attached Form" listed in the declarations. Indeed, there is a provision that specifically references professional liability in the Policy. J.A. 60. It sets out what will not be covered "unless professional liability coverage has been endorsed hereon." Id. Although the industry standard is that professional liability coverage must be specially elected, see Ostrager & Newman, supra, § 7.02(b)(6), whether that coverage is included under the terms of the business liability policy or as a separate endorsement can vary with the contract. Here, we find not only an issue of contractual interpretation but issues of material fact as to whether professional liability was outlined in a missing endorsement or included within form IB 101 03 99. The law is clear that summary judgment is wholly inappropriate where such a dispute of fact as we see here exists. See Fed. R. Civ. P. 56(c). There is at least a genuine issue of material fact as to whether the missing endorsement even existed, and we find that this is sufficient to preclude judgment as a matter of law in this case.

B.

We now turn briefly to the remaining issues: the scope of professional liability under the Policy and whether "Exclusion j" applies to preclude coverage here. As the district court's finding that professional liability was covered in a "missing endorsement"

11

was an integral part of its analysis of these issues, we need not reach their merits in order to reverse. We are, however, sufficiently troubled by the district court's analysis of the coverage limits that a note of caution is warranted.

We view the district court's finding of unlimited liability as questionable, independent of its reliance on a presumption of a separate, missing endorsement. Even if the court were to find that the professional liability policy was contained in a missing endorsement, we do not believe that an inference of unlimited liability can be drawn from these facts. As a practical matter, we find it extremely unlikely that Cincinnati would provide unlimited coverage for a premium of only $713 per year.

The district court cites <u>Williamson v. South Carolina Ins. Reserve Fund</u>, 586 S.E.2d 115 (S.C. 2003), as primary authority for its conclusion that the court may infer unlimited liability in the absence of a liability limit. <u>See</u> <u>Cincinnati</u>, 413 F. Supp. 2d at 649 (citing <u>Williamson</u>, 586 S.E.2d at 119). That case is, however, clearly distinguishable from the one now before us. In <u>Williamson</u>, the Supreme Court of South Carolina found unlimited liability because the liability limits in a <u>statute</u> had been repealed. 586 S.E.2d at 119. There is no statute involved here. This is simply a case of contractual interpretation, and South Carolina interprets insurance contracts pursuant to the general rules of contract construction. <u>State Farm Mut. Auto. Ins. Co. v. Calcutt</u>, 530

S.E.2d 896, 897 (S.C. Ct. App. 2000).  Further, South Carolina law holds that an endorsement to an insurance policy must be read together with the policy.  Long v. Adams, 312 S.E.2d 262, 265 (S.C. Ct. App. 1984).  Consequently, the Policy here cannot be ignored entirely in favor of unknown terms of the purportedly missing endorsement.

## III.

For the foregoing reasons, we conclude that the district court's grant of summary judgment to Appellees should be reversed and remanded for further consideration in light of this opinion.

REVERSED AND REMANDED

13