712 S.E.2d 401

**Larry Lee BOITER, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION and South Carolina Department of Public Safety, Respondents.**

and

**Jeannie Boiter, Appellant,**

v.

**South Carolina Department of Transportation and South Carolina Department of Public Safety, Respondents.**

No. 26981.

Supreme Court of South Carolina.

Heard Jan. 6, 2011.

Decided June 6, 2011.

Rehearing Denied July 21, 2011.

James Fletcher Thompson, of Spartanburg, for Appellants.

Andrew F. Lindemann, of Davidson & Lindemann, of Columbia and Ronald H. Colvin, of Spartanburg, for Respondents.

Justice HEARN.

Two issues are presented in this appeal: (1) whether the two-tier statutory cap in the South Carolina Tort Claims Act is constitutional, and (2) whether two separate governmental entities' negligent acts, which resulted in severe injuries to

Larry Lee and Jeannie Boiter (collectively, the Boiters) constitute one or two occurrences under the Tort Claims Act. The circuit court found the statutory caps constitutional and that only one occurrence was presented by the facts. We affirm in part and reverse in part.

## *FACTS*

The Boiters were injured when the motorcycle they were riding collided with a car driven by Nancy Kochenower at an intersection near Inman, South Carolina. The red signal light bulbs for the road that Kochenower was traveling had burned out earlier that day. The Boiters suffered significant injuries as a result of being thrown from the motorcycle, requiring lengthy hospital stays and incurring $888,756 in medical bills and $203,897 in lost wages. They settled with Kochenower for her policy limits of $50,000.

The Boiters filed four separate lawsuits against South Carolina Department of Transportation (SCDOT) and South Carolina Department of Public Safety (SCDPS) (collectively, Respondents), alleging negligence in their failure to prevent the accident. With respect to SCDOT, the Boiters alleged SCDOT failed to implement an appropriate re-lamping policy to replace bulbs in traffic signals before they burn out. With respect to SCDPS, the Boiters alleged that a citizen's call one hour and twenty-seven minutes prior to the accident reporting the outage should have resulted in SCDPS notifying a trooper to report to the scene and direct traffic. The negligence of both agencies is undisputed in this appeal. At trial, the jury found in favor of the Boiters and awarded each of them a total of 1.875 million dollars.

Thereafter, Respondents filed motions for judgment notwithstanding the verdict, a new trial, and to reduce the verdict amount pursuant to the Tort Claims Act. In response, the Boiters filed a motion challenging the constitutionality of the two-tier cap in the Tort Claims Act, and in the alternative, asserted that Respondents' negligence constituted two separate occurrences under the Act. The circuit court denied Respondents' motions for judgment notwithstanding the verdict and a new trial as well as the Boiters' motion challenging the cap's constitutionality, but the court found there was only

one occurrence and granted Respondents' motion to reduce the verdict pursuant to the Act. Therefore, the Boiters' verdict was reduced to $300,000 each, for a total of $600,000. This appeal followed.

## ISSUES

The Boiters raise two issues on appeal:

(1) Did the circuit court err in failing to find that the two-tier cap on damages under the Tort Claims Act is unconstitutional as a violation of equal protection?

(2) Did the circuit court err in failing to find that two separate occurrences gave rise to the Boiters' injuries?

## ANALYSIS

### I. CONSTITUTIONALITY OF CAP

■ Section 15–78–120 of the South Carolina Code (2005) states the following, in pertinent part:

(1) Except as provided in Section 15–78–120(a)(3), no person shall recover ... a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

(2) Except as provided in Section 15–78–120(a)(4), the total sum recovered hereunder arising out of a single occurrence shall not exceed six hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

(3) No person may recover in any action or claim ... caused by the tort of any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, a sum exceeding one million two hundred thousand dollars because of loss arising from a single occurrence....

(4) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million

two hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

Therefore, a two-tier statutory cap on damages exists based on who allegedly committed the act. For state-employed physicians and dentists, the cap is 1.2 million dollars per person and per occurrence. For all other state entities, the cap is $300,000 per person and $600,000 per occurrence. The Boiters allege this disparate treatment based solely on the identity of the tortfeasor violates their constitutional right to equal protection of the laws.

■■ Because no fundamental right has been infringed, we focus our analysis on the rational basis test. *See Wright v. Colleton County School Dist.*, 301 S.C. 282, 291, 391 S.E.2d 564, 570 (1990). Under this framework, the Equal Protection Clause is satisfied if: (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *Samson v. Greenville Hospital System*, 295 S.C. 359, 368 S.E.2d 665 (1988). "Those attacking the validity of legislation [under the rational basis test of the Equal Protection Clause] have the burden to negate every conceivable basis which might support it." *Lee v. SC Dept. of Natural Resources*, 339 S.C. 463, 470 n. 8, 530 S.E.2d 112, 115 n.8 (2000)(citing to *Fed'l Commc'ns Comm'n v. Beach Comm'n, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). The Boiters argue the two-tier cap's different treatment of injured plaintiffs based on the identity of the tortfeasor does not have a rational basis sufficient to withstand constitutional scrutiny. Respondents counter that this Court has consistently upheld the constitutionality of the monetary caps, and the Boiters have not put forth sufficient evidence to depart from this precedent.

This Court has upheld the constitutionality of the statutory caps in three prior cases. In *Wright,* the Court upheld the general existence of statutory caps. *Wright,* 301 S.C. at 292, 391 S.E.2d at 570. There, a child was injured while working with a product on the school district's premises. *Id.* at 284, 391 S.E.2d at 566. Wright, who was the child's mother, and the child filed actions against the school district, among other

entities. *See id.* The circuit court granted judgment to Wright and the child in the amount of $750,000. *Id.* at 285, 391 S.E.2d at 566. Wright and the child appealed, arguing numerous constitutional challenges, including equal protection. *See id.* at 290, 391 S.E.2d at 569. This Court upheld the constitutionality of the statute, finding:

> The limitation on damages as set forth in the statute bears a reasonable relationship to the legislative objectives as expressed in Section 15–78–20(a) of relieving the government from hardships of unlimited and unqualified liability and preserving the finite assets of governmental entities which are needed for an effective and efficient government. The limitations set forth in the statute rest on a reasonable basis and are not arbitrary in that the legislature has balanced the needs for services and demand for reasonable taxes against the fair reimbursement of injured tort victims. Finally, we find that the damage limitation provisions apply to similar plaintiffs in a similar manner.

*Id.* at 291, 391 S.E.2d at 570.

In *Foster v. South Carolina Department of Highways & Public Transportation,* 306 S.C. 519, 413 S.E.2d 31 (1992), the Court had an opportunity to examine the two-tier cap at issue in this case. Foster sued the Highway Department after she was involved in a car accident, claiming the Highway Department failed to give proper warning of a low shoulder and failed to maintain the highway. Foster was awarded three million dollars, and the circuit court reduced the verdict amount to $250,000. *Id.* at 522, 413 S.E.2d at 33–34. Foster appealed, claiming the two-tier cap was unconstitutional as a violation of her right to equal protection. *Id.*

This Court found Foster, as the party asserting the unconstitutionality of the statute, failed to meet her burden of proof to show that the classification was arbitrary and without any reasonable basis. *See id.* at 526–27, 413 S.E.2d at 36. The Court noted that it affords great deference to a legislative classification and will uphold a classification if it is "not plainly arbitrary and there is any reasonable hypothesis to support it." *Id.* at 526, 413 S.E.2d at 36. In finding against Foster, we said, "The fact that the classification results in some inequity does not render it in violation of the Constitution."

*Id.* at 527, 413 S.E.2d at 36 (citing *State v. Smith,* 271 S.C. 317, 247 S.E.2d 331 (1978)). The Court also articulated a specific basis found in the statute for the two tiers: "These higher limits and mandated coverages are recognition by the General Assembly of significantly higher damages in cases of medical malpractice." In regards to Foster's burden of proof, the Court instructed,

> Foster must offer evidence that the legislative finding of higher awards in actions of medical malpractice was unfounded and thus no rational basis for the classification existed. She has not met her burden of proof by the bare assertion that her damages are as high as damages that might be assessed against a physician or dentist.

*Id.*

Sixteen years after *Foster,* this Court decided *Giannini v. South Carolina Department of Transportation,* 378 S.C. 573, 664 S.E.2d 450 (2008). There, a car hydroplaned and crossed into the other lane of traffic, striking two cars; one person was killed and two others suffered serious bodily injuries. *Id.* at 578, 664 S.E.2d at 452. After citing to both *Wright* and *Foster,* this Court found the "[l]egislature's aggregate limitation on liability is supported by a rational basis such that there is no equal protection violation." *Id.* at 584, 664 S.E.2d at 456. This Court noted the legislation was in line with the purposes of preserving finite governmental assets and treating similar plaintiffs in a similar manner. *See id.* This Court then cited to cases from other jurisdictions which have also held that general liability caps do not violate equal protection. *See id.* at 585, 664 S.E.2d at 456 (citing *Wilson v. Gipson,* 753 P.2d 1349 (Ok.1988) and *Lee v. Colorado Dep't of Health,* 718 P.2d 221 (Colo.1986)).

With these three cases in mind, we now turn to the Boiters' argument. At the hearing before the circuit court on the constitutionality of the two-tier system, the Boiters produced substantial evidence in the form of national and state studies designed to establish that there is no empirical evidence to justify the difference in the respective caps. The Boiters submitted the following in support of the cap's unconstitutionality: (1) Three U.S. Department of Justice Bulletins detailing the number of trials and verdicts in large counties for civil

cases, tort cases, and medical malpractice cases; (2) U.S. Department of Justice report on Medical Malpractice Insurance Claims in Seven States[1]; (3) South Carolina Legislative Audit Council Report in 2000 and 2004, reviewing the Medical Malpractice Compensation Fund; (4) SCDOT and SCDPS budgets for 2007–2008; and (5) correspondence from the State Budget and Control Board, Boiters' counsel, and Respondents' counsels regarding the above reports. The Boiters argue that consistent with the degree of proof suggested by the Court in *Foster*, they introduced sufficient evidence to demonstrate the constitutional infirmity in the two-tier system. However, even taking all of their evidence into account, it cannot overcome the great deference this Court must give to the General Assembly's stated classification. Under settled principles, we will sustain such classifications if *any* reasonable hypothesis exists to support them. *Samson*, 295 S.C. at 367, 368 S.E.2d at 665; *Foster*, 306 S.C. at 526, 413 S.E.2d at 36.

Two reasonable hypotheses exist in the code to substantiate section 15–78–120:(1) relieving the government from the hardships of unlimited liability; and (2) furthering accountable and competent healthcare while promoting affordable medical liability insurance. S.C.Code Ann. § 15–78–20(a), (g) (2005). The evidence submitted by the Boiters before the circuit court does not overcome these two reasonable hypotheses, and we are not persuaded that the General Assembly's two-tier classification is arbitrary or without rational basis. Moreover, our precedent in this area, although perhaps not as compelling from a factual or evidentiary standpoint as this case, convinces us that the Boiters' constitutional challenge should be denied. Therefore, we find that the two-tier cap meets the rational basis test, and we affirm the circuit court's finding of constitutionality.

## II. OCCURRENCE

■ The Boiters argue that the circuit court erred in failing to find two separate occurrences in the two separate acts of negligence committed by SCDOT and SCDPS. We agree.

---

1. South Carolina was not one of the seven states discussed in this report.

Under Section 15–78–30(g) of the South Carolina Code (2005), "occurrence" is defined as an "unfolding sequence of events which proximately flow from a single act of negligence." In its order denying the Boiters' arguments that there were two separate occurrences, the circuit court stated:

The Plaintiffs present a logical argument as to the statutory construction of the term 'occurrence,' but under the facts of this case, where the jury's verdict has to be read as finding both Defendants as concurrently at fault in bringing about the damages to the Plaintiffs, the definition of occurrence limits the award to the statutory cap.

We disagree and find the facts here present a classic case of two occurrences.

Questions of statutory construction are a matter of law. *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and the language must be construed in the light of the intended purpose of the statute." *Sumter Police Dep't v. Blue Mazda Truck*, 330 S.C. 371, 375, 498 S.E.2d 894, 896 (Ct.App.1998). "In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998).

Only one appellate case [2] in South Carolina has considered the issue of occurrence under section 15–78–30. In *Chastain v. AnMed Health Foundation*, 388 S.C. 170, 694 S.E.2d 541 (2010), the plaintiff suffered severe and permanent injuries as a result of the poor care given to her by six nurses at AnMed,

---

2. In *Williamson v. South Carolina Insurance Reserve Fund,* two different physicians examined a mother during childbirth and failed to take necessary steps, at different times during the delivery, to prevent harm to the child. *See* 355 S.C. 420, 422, 586 S.E.2d 115, 116 (2003). The circuit court found two occurrences had been established for purposes of the Tort Claims Act because neither doctor's actions was the result of the other's. *See id.* at 423, 586 S.E.2d at 116. On appeal, this Court declined to address whether two occurrences existed. *See id.* at 426, 586 S.E.2d at 118.

a charitable institution. *Id.* at 171–72, 694 S.E.2d at 542. The jury returned a general verdict against AnMed for 2.2 million dollars, and the trial judge reduced it to the $300,000 statutory cap based on his finding of one occurrence. *Id.* at 172–73, 694 S.E.2d at 542–43. In affirming the verdict reduction, this Court noted that the burden to prove more than one occurrence rested on the plaintiff and that from the general verdict rendered, it was impossible to conclude that the jury had found more than one occurrence. *Id.* at 174, 694 S.E.2d at 543. Because the facts presented here are so different than those involved in *Chastain*, that case provides little guidance to us.

Cases from other jurisdictions are similarly inapposite because they involve a single governmental entity which committed multiple acts of negligence, a completely different situation than the one before us. *See Tex. Dep't of Mental Health & Mental Retardation v. Petty By & Through Kauffman*, 848 S.W.2d 680 (Tex.1992) (one occurrence after department committed multiple acts of negligence); *Folz v. State*, 110 N.M. 457, 797 P.2d 246 (1990) (negligence by highway department which resulted in truck striking five separate vehicles in collision was only one occurrence under statute); *cf. Brooks v. Memphis & Shelby County Hosp. Auth.*, 717 S.W.2d 292 (Tenn.App.1986) (finding two occurrences when one employee negligently let patient fall off stretcher and a second employee negligently gave an overdose of medication, resulting in patient's death). Accordingly, we determine the issue before us based solely on the peculiar facts of this case.

In order to determine the number of occurrences, the Boiters urge this Court to focus on the number of negligent acts; in contrast, Respondents contend we should look to the number of injuries caused by those acts. The circuit court specifically found in its order that "each of [the Respondents] committed a separate wrongful act that led to the damages," and that "[t]he wrongful acts [of Respondents] were separate and distinct." Nevertheless, the circuit court found that each act of negligence was "a part of the same 'unfolding sequence of events' that resulted in the Boiters' damages." Therefore, the circuit court accepted Respondents' argument and equated occurrence with the number of injuries sustained by the Boiters. While we do not adopt a bright-line test based on the

existence of multiple acts of negligence, we find the circuit court erred in tying the number of occurrences to the number of injuries sustained by the Boiters.

We are persuaded that two independent and separate acts of negligence occurred here—one by SCDOT and one by SCDPS. There is no indication that the Respondents' actions combined to form a single act of negligence. Unlike the situation presented in *Chastain*, we have two separate and distinct acts of negligence involving two separate and distinct entities together with separate verdicts against each of them. As found by the jury, SCDOT was negligent in not having a re-lamping policy in place, and SCDPS was negligent in not following its own policy to notify a SCDOT technician when a light had burned out. Based on the facts presented here, we cannot see how SCDOT's negligent act "unfolded" into SCDPS' negligent act. SCDPS only became involved due to a citizen call regarding the burned-out light bulb; SCDOT never called SCDPS regarding the light, and SCDPS never informed SCDOT about the citizen call. We can find no causal connection between the actions of SCDOT and SCDPS; had the jury not found SCDOT negligent, the verdict against SCDPS could still stand, and the converse is also true. Therefore, we do not believe that these two separate and independent acts of negligence constituted an unfolding sequence of events which injured the Boiters.

Respondents cite to language found in section 15–78–120(2),[3] arguing that it demonstrates the General Assembly's recognition that the number of governmental entities involved in a particular occurrence does not increase the statutory limits on liability. While we do not disagree with Respondents' view, we do not believe this ends the inquiry. In many situations, negligent acts from more than one entity would still equal but one occurrence. However, under these facts, there were two separate entities which committed two separate and independent acts of negligence, and we do not believe the General Assembly's intent was to limit recovery in such situations based on there being only one occurrence. Accordingly, we hold each Respondent's act of negligence was a separate

---

**3.** The subsection notes that liability is limited to $600,000 regardless of the number of agencies or political subdivisions involved.

occurrence entitling the Boiters to a combined verdict of 1.2 million dollars, and we reverse the circuit court.

## CONCLUSION

We hold that the two-tier statutory cap on damages is constitutional against an equal protection challenge. However, we also hold that more than one occurrence existed in this situation. Therefore, we affirm in part and reverse in part the circuit court's order.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES.

I concur in part and dissent in part. I agree with the majority that the differential caps created by the Tort Claims Act (TCA) are constitutional. I disagree, however, with the majority's conclusion that there was more than one occurrence here. I would therefore affirm the circuit court's order.

In my opinion, the majority errs when it focuses on the number of acts of negligence rather than on the TCA's definition of occurrence: "an unfolding sequence of events which proximately flow from a single act of negligence." S.C.Code Ann. § 15–78–30(g) (2005). Under the TCA, an occurrence is not defined by the number of individual acts of negligence, nor does it require, as would the majority, a "causal connection" between these independent acts. Here, appellants' theory was that as the result of the SCDOT's negligent failure to have a replacement bulb policy a traffic light was not functioning properly, and when a concerned citizen notified SCDPS of the dangerous situation, that agency negligently failed to send a trooper to the scene to direct traffic. This unfolding sequence of events proximately led to the accident and appellants losses.

In my view, an occurrence is not defined by the number of agencies involved, or by the acts of negligence committed, nor by temporal proximity. Instead, the occurrence ends when the unfolding sequence of events is broken by an unnatural or intervening cause. Here, there was no such break, and thus

appellants each suffered only one compensable loss as the result of a single occurrence.

I would affirm.