## 23198

Arthurene WRIGHT, Individually and as Guardian ad Litem for Ray
Thaddeus Green, a Minor Over the Age of Fourteen (14) Years, and Ray
Thaddeus Green, Respondents v. COLLETON COUNTY SCHOOL
DISTRICT, and South Carolina Insurance Reserve Fund, Appellants.

(391 S.E. (2d) 564)

Supreme Court

*Charles E. Carpenter, Jr.* of *Richardson, Plowden, Grier & Howser,* Columbia, and *Donald H. Fraser* of *McLeod, Fraser & Cone,* Walterboro, *for appellants.*

*Andrew Kenneth Epting, Jr.* of *Wise & Cole, P.A.*, and *J. Graham Sturgis, Jr.* of *Altman & Sturgis, P.A.*, Charleston, for respondents.

Heard March 7, 1990.

Decided April 30, 1990.

HARWELL, Justice:

This is an appeal from a declaratory judgment action in which we must determine (1) the effective date of the South Carolina Tort Claims Act; (2) whether a political subdivision may waive the statutory cap on damages set forth in the South Carolina Tort Claims Act; (3) whether a parent may separately recover for medical expenses and loss of services resulting from injuries to a child and if so, in what amount; and (4) the constitutionality of the statutory cap on damages set forth in the South Carolina Tort Claims Act.

## I. FACTS

On July 3, 1986, respondent Ray Thaddeus Green (child) suffered serious injuries and burns when using a product made by the Savogran Company while he was working on the premises of appellant Colleton County School District. At the time respondent child was injured, he was a minor. Respondent child's mother, Arthurene Wright (parent), was his guardian ad litem and the person responsible for his maintenance and support. The mother is also a respondent in this action. Tort actions were filed against the Savogran Company and appellants Colleton County School District and South Carolina Insurance Reserve Fund on behalf of respondent child for bodily injuries and on behalf of respondent parent for hospital and medical bills and for the loss of services of her minor son.

A confidential settlement was reached in the tort action with the Savogran Company. A conditional settlement was also reached in the tort action with appellants in the amount of $1,000,000.00, representing the limit of the policy. Respondents have received $250,000.00. However, because the South Carolina Tort Claims Act places a ceiling on recovery, the additional $750,000.00 in coverage remains in dispute. The parties stipulated that both the parent's and the

child's damages each exceeded $250,000.00.

The conditional settlement provided that the additional $750,000.00 would be paid if the statutory cap on the South Carolina Tort Claims Act was held to be invalid, unconstitutional, or waived. Alternatively, the conditional settlement provided that an additional $250,000.00 would be paid if it was determined that the child's claim and his parent's claim are separately cognizable under the Tort Claims Act.

The parties agreed to resolve the issues by initiation of a declaratory judgment action. The circuit court granted judgment to the parent and child in the amount of $750,000.00 This appeal follows.

## II. DISCUSSION

### A. *The Effective Date of the Tort Claims Act*

In *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985), this Court abolished the doctrine of sovereign immunity in South Carolina with certain limitations. We delayed the implementation of the *McCall* decision until July 1, 1986, but provided that: (1) sovereign immunity would not bar recovery in any case filed after July 1, 1986, and (2) it would not bar recovery in any case pending or in those filed on or before July 1, 1986 if the defendant had liability insurance coverage.

In response to our decision in *McCall*, the legislature enacted the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 *et seq.* (1989). It was effective on July 1, 1986. Section 15-78-20(c) as originally drawn and effective July 1, 1986 provided:

> (c) As to those causes of action that arise or accrue prior to the effective date of this act, the General Assembly reinstates sovereign immunity on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty; provided, however, that sovereign immunity will not bar recovery in any case filed on or before the effective date of this act if the defendant maintained liability insurance coverage. In such cases recovery shall not exceed the limits of the liability insurance coverage.

The use of the word "filed" in *McCall* and in Section 15-78-

20(c) of the original Tort Claims Act created confusion. This confusion was resolved by the Court in *Moore v. Berkeley County*, 290 S.C. 43, 348 S.E. (2d) 174 (1986) and by the legislature by amending the "filing" language of Section 15-78-20(c). In *Moore*, the plaintiff received personal injuries as a result of an accident on August 27, 1982. The action was commenced on June 12, 1985. The defendants answered and moved for summary judgment on the grounds of sovereign immunity. The plaintiff then moved for a voluntary nonsuit without prejudice which was granted by the trial judge. This Court affirmed, concluding that the defendants could continue to assert sovereign immunity should the plaintiff decide to refile after July 1, 1986. The intention of this Court was that the triggering event was the *accrual* of a cause of action and not the *filing*.

The legislature promptly harmonized our decision in *Moore* with the Tort Claims Act. In January of 1987, the legislature amended Section 15-78-20(c) to read:

> (c)(i) As to those causes of action that arise or accrue prior to the effective date of this act, the General Assembly reinstates sovereign immunity on the part of the State, its political subdivisions and employees, while acting within the scope of official duty provided that sovereign immunity will not bar recovery in any cause of action arising or accruing on or before the effective date of this act if the defendant maintained liability insurance coverage.

This amendment was effective March 16, 1987.

Appellants argue that because respondent child was injured after July 1, 1986, his recovery is limited to the statutory cap set forth in Section 15-78-120(a). Respondents however, argue that the legislative amendment to Section 15-78-20 which became effective March 16, 1987, changed or deferred the effective date of the Tort Claims Act from July 1, 1986, to March 16, 1987 thereby reinstating sovereign immunity to March 16, 1987, unless the defendant had liability coverage. Respondents then argue that because injury to the child accrued prior to March 16, 1987, and appellant maintained insurance coverage up to $1,000,000.00, he is not subject to the statutory damages cap as set forth in Section 15-78-

120(a). In sum, respondents urge us to find that the Tort Claims Act and its statutory cap on damages was not effective until March 16, 1987.

Respondents' interpretation strains a plain reading of the statute. The primary function of the court in interpreting a statute is to ascertain the intention of the legislature. *State v. Martin*, 293 S.C. 46, 358 S.E. (2d) 697 (1987). We need not look beyond the words of a statute to ascertain the intent of the legislature when it appears as here, on the face of the statute. Section 15-78-20(a) states in pertinent part:

> It is further declared to be the public policy of the State of South Carolina that to insure an orderly transition from sovereign immunity to qualified and limited liability that the General Assembly intends to provide for liability on the part of the State and its political subdivisions only from July 1, 1986, forward in prospective fashion.

It is clear from this statement that the legislature intended the Tort Claims Act to be effective as of July 1, 1986. We recognized July 1, 1986 as the effective date of the Tort Claims Act in the case of *Taylor v. Murphy*, 293 S.C. 316, 360 S.E. (2d) 314 (1987). We further find that the language of the 1987 amendment contained in Section 15-78-20(c)(i) which refers to "the effective date of *this act*," refers to the effective date of the Tort Claims Act, July 1, 1986, and not the effective date of the amendment, March 16, 1987. Because we find that the effective date of the Tort Claims Act is July 1, 1986 and the injury occurred on July 3, 1986, respondents are subject to the statutory damages cap as set forth in the Tort Claims Act.

B. *Whether An Entity May Waive the Tort Claims Act's Limitation On Damages*

Appellants assert that in cases accruing after July 1, 1986, possession of liability insurance coverage above the statutory cap set forth in Section 15-78-120(a) does not constitute a waiver of immunity up to the coverage limits. We agree.

Section 15-78-20(c)(i) expressly provides that liability insurance coverage acts as a limitation on recovery only in

such cases arising or accruing on or before July 1, 1986. For all actions arising after that date, the limits set forth in Section 15-78-120(a) apply. Therefore, only if respondent had been injured on or prior to July 1, 1986, would he be able to take advantage of the $1,000,000.00 policy limit. To hold otherwise, would defeat the express legislative intent that "the State, and its political subdivisions, are only liable for torts within the limitations of this chapter . . ." Section 15-78-20(a). It would also contravene the legislature's directive to construe provisions of the Tort Claims Act relating to limitations on and exemptions to the liability of the State liberally, in favor of limiting liability of the State. Section 15-78-20(f).

Because the legislature created an express waiver of immunity to those actions arising or accruing on or before July 1, 1986, we may infer that the legislature would have provided a similar waiver of immunity to those actions arising or accruing after July 1, 1986 had the legislature so intended. Furthermore, appellant school district is a creature of the State. It is a political subdivision. It does not have the power by its actions to waive policy decisions which the legislature has made about the rights and remedies under statute. Consequently, we find that appellants did not and cannot waive its immunity up to the coverage limits of its policy as to causes of action arising or accruing after July 1, 1986 and that the statutory cap set forth in Section 15-78-120(a) applies to such actions.

C. *Whether A Parent Can Have Separate and Additional Recovery For Medical Expenses and Loss of Services Resulting From Injuries To A Child*

Appellants assert that because the parent's claims for her child's medical expenses and loss of services do not constitute a "bodily injury" within the definition of "loss" as contained in Section 15-78-30(f), such damages are not recoverable under the Tort Claims Act. Appellants' argument was recently addressed in the case of *Gosnell v. Dorchester School District No. 2*, — S.C. —, 389 S.E. (2d) 865 (1990). In *Gosnell*, we held that a spouse of an injured party was entitled to recover for economic losses as a result of incurred medical expenses. In addressing whether the spouse

was also entitled to recover for loss of consortium under the Tort Claims Act, we stated that: (1) Section 15-78-50 permits recovery to "any person who may suffer a loss proximately caused by a tort" committed by the State except that the State would not be liable for a tort of an employee if a private person would not be liable for that tort under South Carolina law, and (2) Section 15-78-30(f) defines a "loss" not only as "bodily injury," but as "any other element of actual damages recoverable in actions for negligence . . ." Because a spouse is entitled to pursue an action for consortium at common law, and because damages awarded for loss of consortium are compensatory and therefore actual damages, we held that loss of consortium is within the definition of "loss" contained in Section 15-78-30(f) and compensable. Similarly, we find that the parent's claims for loss of services and medical expenses are within the statutory definition of "loss" as contained in Section 15-78-30(f) and are therefore recoverable.

### D. *Amount of Damages Recoverable*

Appellants next argue that the parent's claim for damages is derivative from the direct claims of the child and are but one occurrence such that the total sum of recovery for both the parent and child is limited to $250,000.00. Respondents argue that the parent's claim is separate and distinct from that of the child's claim and that the parent should recover an additional $250,000.00. We agree with respondents.

Section 15-78-120(a) provides recovery "[f]or any action or claim" brought under the Tort Claims Act. Section 15-78-120(a)(1) provides that a person's claim or action is limited to $250,000.00 "because of [a] loss" arising from a single occurrence. Section 15-78-120(a)(2) places an aggregate cap of $500,000.00 for damages arising out of a single occurrence. Here, the parent is a "person" who has a "claim or action" if she has suffered a "loss." We have already determined that the parent's claim for medical expenses and loss of services of the son is a "loss" within the definition of Section 15-78-30(f). We find that the parent's loss is a loss which is separately cognizable under the Tort Claims Act and she is entitled to receive $250,000.00[1] in damages without regard to the

$250,000.00 in damages which have already been paid for the child's claims.

### E. *Whether the Statutory Limitation on Recovery Under the Tort Claims Act Is Constitutional*

Respondents argue that the limitation on recovery is unconstitutional in that it violates the right to a jury trial, the right of every person to have a remedy for wrongs sustained, equal protection, and the separation of powers doctrine. Although respondents' arguments are without merit, we have addressed each of these arguments below.

### THE RIGHT TO A JURY TRIAL

Respondents argue that the limitation on damages infringes upon the right to have damages determined by a jury and therefore, the right of trial by jury. We disagree. Here, the statute does not restrain the fact-finding province of the jury or prevent a jury from assessing a plaintiff's damages. *See Etheridge v. Medical Center Hospitals*, 237 Va. 87, 376 S.E. (2d) 525 (1989).

In *Etheridge*, the Virginia Supreme Court upheld a state statute limiting recovery in medical malpractice claims to $750,000.00 despite a "right to jury challenge." The court in *Etheridge* acknowledged that the jury's fact finding function extended to the assessment of damages, but reasoned that once the jury has ascertained the facts and assessed the damages, the constitutional mandate is satisfied and that thereafter, it is the duty of the court to apply the law to the facts. The reasoning of *Etheridge* was adopted by the fourth circuit in *Boyd v. Bulala*, 877 F. (2d) 1191 (4th Cir. 1989) in upholding the same statute against a "right to jury trial" challenge under the United States Constitution.

Similarly, we find that the limitation on recovery as set forth in the Tort Claims Act does nothing more than establish the outer limits of a remedy provided by the legislature. A remedy is a matter of law, not a matter of fact. Although a party has the right to have a jury assess his damages, he has no right to have a jury dictate through an award, the legal

---

[1] It was stipulated by the parties that both the parent and child's damages each exceeded $250,000.00.

consequences of its assessments. Accordingly, we find that the fundamental right to a trial by jury has not been infringed upon.

## THE RIGHT OF A REMEDY
## FOR WRONGS SUSTAINED

Respondents argue that Section 15-78-120(a) violates S.C. Const. art. I, § 9 which states that "[a]ll courts shall be public, and every person shall have a speedy remedy therein for wrongs sustained." We find that this provision is not a guarantee of full compensation to all injured persons and therefore, uphold the limitation on recovery as set forth in Section 15-78-120(a). *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 406 A. (2d) 704 (1979).

## EQUAL PROTECTION

Because we have found that no fundamental right has been infringed upon, and we have rejected respondent's request to argue against the precedent of *Doe v. American Red Cross Blood Services*, 297 S.C. 430, 377 S.E. (2d) 323 (1989), we must analyze the equal protection argument under a rational basis test.

In *Doe*, we held that legislation passes muster under equal protection if (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis.

Here, we find that the limitation on damages as set forth in the statute bears a reasonable relationship to the legislative objectives as expressed in Section 15-78-20(a) of relieving the government from hardships of unlimited and unqualified liability and preserving the finite assets of governmental entities which are needed for an effective and efficient government. The limitations set forth in the statute rest on a reasonable basis and are not arbitrary in that the legislature has balanced the needs for services and demand for reasonable taxes against the fair reimbursement of injured tort victims.

Finally, we find that the damage limitation provisions apply to similar plaintiffs in a similar manner. All tort victims

injured by the State have a right to bring an action against it. As in *Doe*, we find that potential plaintiffs are not treated disparately because the same monetary cap applies equally to the entire class of plaintiffs.

## SEPARATION OF POWERS DOCTRINE

The General Assembly of South Carolina may enact, alter, or repeal any law or remedy unless inconsistent with the South Carolina Constitution. *See* S.C. Const. art XVI, § I; *State v. Carson*, 274 S.C. 316, 262 S.E. (2d) 918 (1980). Consequently, we find that the statutorily imposed limit on the amount on damages recoverable from the State is a proper exercise of legislative power. *See also, Etheridge v. Medical Center Hospitals, supra* (Virginia Supreme Court held limitation on medical malpractice damages did not violate the separation of powers doctrine and was a proper exercise of legislative power).

## III. CONCLUSION

We hold that the effective date of the Tort Claims Act is July 1, 1986 such that any person who suffers injuries after this date is limited in recovery to the amount of damages as set forth in the Tort Claims Act. In cases arising after July 1, 1986, possession of liability coverage in excess of the statutory limit on damages does not constitute a waiver of immunity up to the coverage limit. The limitation on damages as set forth in the Tort Claims Act is constitutional. We further find that the parent's claims for medical expenses and loss of services are claims that are separately cognizable from the child's claim and that under the facts of this case, the parent is entitled to receive $250,000.00 for those claims.

Affirmed in part; reversed in part.

GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.