23992

Grady DICKERSON, d/b/a/ The Villager, Plaintiff v. COCA-COLA BOT-
TLING COMPANY AFFILIATED LIMITED and Atlantic Soft Drink
Company, Defendants. Gerald L. DANIELS, d/b/a/ D & J Grocery, Plain-
tiff v. PALMETTO BOTTLING COMPANY, et al., Defendants. Alvin
Wayne CAMPBELL, et al., Plaintiffs v. PALMETTO BOTTLING COM-
PANY, et al., Defendants. Henry STOKES, d/b/a/ Stokes Grocery, Plain-
tiff v. PALMETTO BOTTLING COMPANY, et al., Defendants.

(440 S.E. (2d) 359)

Supreme Court

*Michael S. Church* of *Turner, Padget, Graham & Laney,*
*P.A.,* Columbia, *for defendant Atlantic Soft Drink Co., Inc.*

*Gary M. Cohen* of *Blumenfeld & Cohen,* Washington, DC,
and *Elizabeth Van Doren Gray* of *Glenn, Irvin, Murphy,*
*Gray & Stepp,* Columbia, *for respondent Ronald K. Runkle.*

*William C. Buckhold* and *Leonard Egan* of *Fort & Schlefer,* Washington, DC, *for plaintiffs Alvin Wayne Campbell, Grady D. Dickerson,* and *Gerald L. Daniels.*

*Ann Yahner* of *Cohen, Milstein, Hausfeld & Toll,* Washington, DC, *for plaintiff Henry Stokes.*

*Colden R. Battey, Jr.* of *Harvey & Battey,* Beaufort, *Leo H. Hill* and *Stephen H. Brown* of *Hill, Wyatt & Bannister,* Greenville, *Frederick A. Gertz* of *Gertz & Moore,* and *Charles F. Cooper, II* of *Cooper, Coffas & Magna,* Columbia, and *Michael D. Glenn* of *Glenn, Haigler & Maddox,* Anderson, *for plaintiffs.*

*T. Travis Medlock, Donald J. Zelenka,* and *William K. Moore,* Columbia, *for State of S.C., amicus curiae.*

Heard Feb. 17, 1993.

Decided Jan. 17, 1994.

TOAL, Justice:

Pursuant to Rule 228, SCACR, we agreed to answer the question certified to this Court by order of Charles K. McCotter, Jr., United States Magistrate for the Western District of North Carolina:

> Whether S.C. Code Ann. § 39-3-40 (1985) precludes prosecution by the State of South Carolina of a witness compelled to testify in a civil action brought in the United State District Court under S.C. Code Ann. § 39-3-10 and § 39-3-30.

Section 39-3-40 is a part of South Carolina's antitrust act. It provides:

> [a]ny person may be compelled to testify in any action or prosecution under §§ 39-3-10 to 39-3-30. But such testimony shall not be used in any other action or prosecution against such witness and such witness shall forever be exempt from any prosecution for the act concerning which he testifies.

We hold that S.C. Code Ann. § 39-3-40 (1985) grants the witness immunity from state prosecution under these circumstances.

## FACTS

The plaintiffs initiated four civil class actions in the United States District Court for the District of South Carolina alleging the defendants conspired to fix soft drink prices in violation of 15 U.S.C. § 1 and S.C. Code Ann. § 39-3-10[1] each of which are provisions of federal and state antitrust laws. The actions were transferred to the United States District Court for the Eastern District of North Carolina. On March 27, 1992, pursuant to notice and subpoena, a former employee of defendant Atlantic Soft Drink Company, Ronald K. Runkle, was deposed by the plaintiffs. Invoking his Fifth Amendment right against self-incrimination, Mr. Runkle refused to answer essentially all of the relevant questions asked by plaintiffs, and defendant, Atlantic Soft Drink Company.

On May 6, 1992, defendant Atlantic filed a motion to compel Mr. Runkle's testimony pursuant to the Federal Rules of Civil Procedure Rule 37(a) in the United States District Court for the Eastern District of North Carolina. On October 1, 1992, the District Court certified the question of immunity from state prosecution under § 39-3-40.

## LAW/ANALYSIS

The certified question asks us to define the scope of Mr. Runkle's immunity from prosecution for compelled testimony.

Immunity from prosecution is found in both the Fifth Amendment to the Constitution of the United States, and in art. I, § 12 of the South Carolina Constitution. This vital constitutional protection from self-incrimination is an integral part of each citizen's fundamental rights and requires delicate treatment in any legal analysis. For a government to excise a

---

[1] Section 39-3-10 provides:

> [a]ll arrangements, contracts, agreements, trust or combinations (a) between two or more persons as individuals, firms or corporations, made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State or in the manufacture or sale of articles of domestic growth or of domestic raw material, (b) between persons or corporations designed or which tend to advance, reduce or control the price or the cost to the producer or consumer of any such product or article and (c) between two or more persons as individuals, firms, corporations, syndicates or associations that may lessen or affect in any manner the full and free competition in any tariff, rates, tolls, premium or prices in any branch of trade, business or commerce are declared to be against public policy, unlawful and void.

citizen from his basic freedom from self-incrimination, there must be either a knowing, intelligent, and voluntary waiver of the right to silence, or there must be a grant of immunity from prosecution. On the present facts, we must focus on the question of immunity.

There are two generally recognized types of immunity: use immunity and transactional immunity. Use immunity prohibits the witness' compelled testimony and its fruits from being used in any manner in connection with criminal prosecution of the witness. *See Murphy v. Waterfront Commission of New York,* 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed. (2d) 678 (1964). Transactional immunity shields the witness from prosecution for the offense to which his compelled testimony relates. *See Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed. (2d) 212 (1972).

Recently, we answered this question about immunity in *State v. Thrift,* 440 S.E. (2d) 341 (1994). In *Thrift,* the criminal defendants were accorded immunity which the State characterized as "use" immunity. *Id.* The State relied on the use immunity granted by the statewide grand jury immunity statute, S.C. Code Ann. § 14-7-1760 (Supp. 1992),[2] and argued that the defendants could be prosecuted after being compelled to testify using a *Kastigar* analysis. *Id.*

We rejected this argument relying instead on our previous interpretation of the South Carolina Constitution. We noted that:

> [s]ubsequent to our decision in *Ex parte Johnson,* which established transactional immunity as the constitutional standard in South Carolina, our General Assembly provided for a State Grand Jury and adopted an accompanying immunity statute. In 1987, when the immunity statute was first adopted, it provided the broader "transactional" immunity for compelled testimony. In May of 1992, when the State Grand Jury Act was amended to

---

[2] Section 14-7-1760 provides in part:

[i]f any person asks to be excused from testifying before a state grand jury . . . on the ground that the testimony or evidence required of him may tend to incriminate him . . . and is notwithstanding directed by the presiding judge to give the testimony . . . he must comply with this direction, but no testimony so given . . . may be received against him in any criminal action, criminal investigation, or criminal proceeding.

give jurisdiction over public corruption, the General Assembly also narrowed the immunity provisions to give only "use" immunity for compelled testimony.

The unavoidable dilemma facing us is the conflict between the State Constitution and the new "use immunity" statute in the State Grand Jury Act. The interpretation of the State Constitution announced in *Ex parte Johnson* is dispositive. Article I, § 12 permits only transactional immunity and as such can only be amended by the citizens of South Carolina by referendum. Absent a constitutional amendment, we have no other course but to hold unconstitutional so much of S.C. Code Ann. § 14-7-1760 (Supp. 1992) as restricts the immunity granted a compelled witness before the State Grand Jury to use immunity.

*Id.* at 18.

The seminal case relied on in *Thrift* to interpret our State's Constitutional immunity from prosecution was *In Re: Hearing Before Joint Legislative Committee, Ex Parte Johnson,* 187 S.C. 1, 196 S.E. 164 (1938). In *Ex Parte Johnson,* we found that anything less than transactional immunity was unconstitutional under Article I, Section 12 (formerly Section 17), of the South Carolina Constitution. In *Thrift, supra,* we reiterated this holding finding that Article I, Section 12 of the South Carolina Constitution still requires a grant of transactional immunity. Any lesser grant of immunity in South Carolina is, therefore, unconstitutional.

The second basis for our answer to this certified question stems from the language of S.C. Code Ann. § 39-3-40 (1985) and its legislative history.

Where a statute is clear and unambiguous, this Court has held that it will be literally applied. *Berkebile v. Outen,* Op. No. 23779, — S.C. —, 426 S.E. (2d) 760 (S.C. Sup. Ct. filed Jan. 11, 1993); *citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 416 S.E. (2d) 641 (1992). On its face, § 39-3-40 grants both use and transactional immunity. Use immunity is granted in the clause which states that the compelled ". . . testimony shall not be used in any other action or prosecution against such witness . . ." S.C. Code Ann. § 39-3-40 (1985). Transactional immunity is granted because the statute exempts a compelled witness ". . . from any prosecution . . ." for the act

concerning which he testified. *Id.* Other than the requirement that the testimony must be compelled and not voluntarily given, there are no conditions or procedures defined in the statute which limit the grant of immunity. Where the language of the statute grants both use and transactional immunity for compelled testimony, the broader grant will control. Thus, under this second analysis, Mr. Runkle must be granted transactional immunity.

It is also argued that § 39-3-40 only applies if the testimony is compelled in a criminal action. The statute provides, however, that "[a]ny person may be compelled to testify in any action or prosecution . . ." S.C. Code Ann. § 39-3-40 (1985). Under a literal reading of the statute, the testimony may be compelled in civil actions as well as criminal prosecutions.

The intent of the legislature determines the interpretation of the statute. *Wright v. Colleton County School District,* 301 S.C. 282, 287, 391 S.E. (2d) 564, 567 (1990). The intent of the legislature to immunize compelled testimony in civil antitrust actions is apparent from the language of § 39-3-30[3] which provides civil remedies for those damaged by violations of § 39-3-10. S.C. Code Ann. § 39-3-30 (1985). Clearly the legislature contemplated civil actions for antitrust violations.

By way of contrast, S.C. Code Ann. § 14-7-1760 (Supp. 1992),[4] the statewide grand jury immunity statute which was found unconstitutional in *Thrift, supra,* was originally enacted in 1987. At the statute's inception, if provided both use and transactional immunity in language similar to the immunity provisions of the antitrust act at issue here. Act No. 150, 1987

---

[3] Section 39-3-30 provides:

> [a]ny person who may be injured or damaged by such arrangement, contract, agreement, trust or combination described in § 39-3-10 may sue for and recover in any court of competent jurisdiction in this State, from any person operating such trust or combination, the full consideration or sum paid by him for any goods, wares, merchandise or articles the sale of which is controlled by such combination or trust.

[4] Section 14-7-1760 provides in part:

> [i]f any person asks to be excused from testifying before a state grand jury . . . on the ground that the testimony or evidence required of him may tend to incriminate him . . . and is notwithstanding directed by the presiding judge to give the testimony . . . he must comply with this direction, but no testimony so given . . . may be received against him in any criminal action, criminal investigation, or criminal proceeding.

S.C. Acts 374. The scope of the immunity granted for compelled state grand jury testimony was subsequently limited to use immunity by legislative amendment. Act. No. 335, 1992 S.C. Acts 1991. This amendment demonstrates that the South Carolina General Assembly well understands the distinction between use and transactional immunity.

The historical climate in which this statute was enacted provides further support for the proposition that the legislature intended § 39-3-40 to grant transactional immunity. In 1897, when § 39-3-40 was enacted, the federal immunity statutes provided transactional immunity. *See* Act of Jan. 24, 1856, ch. 19; 11 Stat. 156 (1857); Act of Feb. 11, 1893, ch. 83; 27 Stat. 444 (1893); Act of Feb. 25, 1903, ch. 755; 32 Stat. 904 (1903). In 1903, the federal antitrust immunity statute was enacted and provided transactional immunity. 15 U.S.C. § 32 (repealed 1970). In 1970, Congress enacted a general use immunity statute, 18 U.S.C. §§ 6001-6005 (1985), and repealed the immunity provisions of numerous acts including the antitrust immunity provision.[5]

Like the U.S. Congress, the South Carolina General Assembly has altered the scope of at least one immunity statute, § 14-7-1760, the statewide grand jury immunity statute.[6] Its failure to similarly alter the scope of § 39-3-40 is evidence of its intent to provide transactional immunity under the antitrust provisions.

A primary purpose for immunity statutes is to assist prosecutors in obtaining evidence that could otherwise be withheld by witnesses who invoke their Fifth Amendment right to avoid self-incrimination. Immunity statutes are especially useful in prosecuting conspiracy crimes (such as antitrust violations) because other evidence of the agreement is often hard to obtain. The General Assembly created the statutory right to a civil remedy for antitrust violations. S.C. Code Ann. § 39-3-30 (1985). Presumably, the legislature recognized that ob-

---

[5] *See* Note, *The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope*, 72 Yale L.J. 1568 (1963) for a history of the federal immunity statutes.

[6] In *Thrift, supra*, the Attorney General conceded that the statewide grand jury immunity statute provided for a more limited immunity for compelled testimony than for witnesses compelled to testify before a county grand jury.

taining evidence for a civil action is as difficult as obtaining evidence in a criminal action, and extended the immunity to witnesses compelled to testify in civil actions. We are aware that co-conspirators may attempt to abuse the immunity statute by immunizing each other in fraudulent civil actions. However, the courts are competent to prevent such abuse.[7]

Accordingly, for the reasons stated, we hold that § 39-3-40 grants transactional immunity from prosecution by the State of South Carolina to a witness compelled to testify in a civil diversity action brought in a federal district court under § 39-3-30.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.

---

[7] Litigants who conspire to fraudulently obtain immunity for each other by bringing civil actions and compelling each other's testimony may be estopped from claiming immunity by the trial court under the common law theories of obstruction of justice or fraud on the court.