IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

## JODI MCCLAY v. AIRPORT MANAGEMENT SERVICES, LLC

**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 3:17-cv-00705  Eli J. Richardson, Judge**

_____

**No. M2019-00511-SC-R23-CV**

_____

We accepted certification of the following questions of law from the United States District Court for the Middle District of Tennessee regarding the constitutionality of Tennessee's statutory cap on noneconomic damages, codified at Tennessee Code Annotated section 29-39-102: "(1) Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate a plaintiff's right to a trial by jury, as guaranteed in Article I, section 6, of the Tennessee Constitution?; (2) Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate Tennessee's constitutional doctrine of separation of powers between the legislative branch and the judicial branch?; (3) Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate the Tennessee Constitution by discriminating disproportionately against women?"  Upon review, we answer each of the District Court's questions in the negative.

### Tenn. R. App. P. 23 Certified Questions of Law

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which HOLLY KIRBY and ROGER A. PAGE, JJ., joined.  CORNELIA A. CLARK, J., filed a separate dissenting opinion. SHARON G. LEE, J., also filed a separate dissenting opinion.  HOLLY KIRBY, J., filed a separate concurring opinion.

John Vail, Washington, DC, and Edmund J. Schmidt III, Nashville, Tennessee, for the plaintiff Jodi McClay.

John R. Tarpley, Nashville, Tennessee, and Janet Strevel Hayes and Jared S. Garceau, Knoxville, Tennessee, for the defendant Airport Management Services, LLC.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Joseph P. Ahillen, Assistant Attorney General, for the intervenor, the State of Tennessee.

Marty R. Phillips, Dale Conder, Jr., and Craig P. Sanders, Jackson, Tennessee, and Wendy L. Longmire, and T. William A. Caldwell, Nashville, Tennessee, for the amicus curiae, Center for Urological Treatment, PLC.

Randall L. Kinnard, Mary Ellen Morris, Jessica J. Kinnard, Donald Capparella, Tyler Chance Yarbro, Kimberly Macdonald, Nashville, Tennessee, for the amici curiae, Cynthia E. Yebuah and Eric N. Yebuah.

Cary Silverman, Washington, DC, and John M. Kizer, Knoxville, Tennessee, for the amici curiae, Tennessee Chamber of Commerce and Industry, Chamber of Commerce of the United States of America, Tennessee Medical Association, American Medical Association, National Federation of Independent Business Small Business Legal Center, American Tort Reform Association, Coalition for Litigation Justice, Inc., and American Property Casualty Insurance Association.

Braden H. Boucek, Nashville, Tennessee, for the amicus curiae, Beacon Center of Tennessee.

Sean W. Martin and Michael J. Petherick, Chattanooga, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

W. Bryan Smith, Memphis, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the amicus curiae, Tennessee Trial Lawyers Association.

Carson A. Royal, Rossville, Georgia, for the amicus curiae, Peter Baldschun.

Philip N. Elbert and Jeffrey A. Zager, Nashville, Tennessee, for the amicus curiae, Barbara Patterson.

# OPINION

## Factual and Procedural Background

The certified questions of law at issue in this appeal arise from a personal injury action brought in the United States District Court for the Middle District of Tennessee ("District Court"). Plaintiff Jodi McClay filed suit against Defendant Airport Management Services, LLC, seeking damages for injuries she sustained in a store at the Nashville International Airport in August 2016. A jury returned a verdict for Plaintiff in the amount of $444,500 for future medical expenses and $930,000 for noneconomic damages, including pain and suffering, permanent injury, and loss of enjoyment of life. The District Court entered judgment against Defendant in accordance with the verdict. Defendant then moved to apply the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102, which generally limits noneconomic damages in civil liability actions to $750,000. Plaintiff responded to Defendant's motion by arguing the statutory cap on noneconomic damages is unconstitutional. The District Court then certified the following questions of law to this Court:

> 1. Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate a plaintiff's right to a trial by jury, as guaranteed in Article I, section 6, of the Tennessee Constitution?
>
> 2. Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate Tennessee's constitutional doctrine of separation of powers between the legislative branch and the judicial branch?
>
> 3. Does the noneconomic damages cap in civil cases imposed by Tenn. Code Ann. § 29-39-102 violate the Tennessee Constitution by discriminating disproportionately against women?

On June 19, 2019, we accepted certification of these three questions of Tennessee law.

In addition to the parties, the State of Tennessee entered an appearance under Tennessee Rule of Appellate Procedure 32 to defend the constitutionality of the statute. Numerous amici curiae also have filed briefs to address the issues before the Court, and we appreciate the perspectives they have provided.

## Applicable Legal Standards

Tennessee Supreme Court Rule 23 provides that this Court "may, at its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee" if the questions of state law are "determinative of the cause" and "there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. "Rather than requiring a federal court to make the law of this State or to abstain from deciding the case until the state courts resolve the point of law, answering certified questions from federal courts promotes judicial efficiency and comity and protects this State's sovereignty." Yardley v. Hosp. Housekeeping Sys., LLC, 470 S.W.3d 800, 803 (Tenn. 2015).

Each of the questions certified by the District Court in this case requires us to determine whether Tennessee's statutory cap on noneconomic damages violates the Tennessee Constitution. In making that determination, we "start with a strong presumption that acts passed by the legislature are constitutional." Lynch v. City of Jellico, 205 S.W.3d 384, 390 (Tenn. 2006). We further "'indulge every presumption and resolve every doubt in favor of the statute's constitutionality.'" Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (quoting *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002)). "This presumption applies with even greater force when, as here, the facial constitutional validity of a statute is challenged." State v. Decosimo, 555 S.W.3d 494, 506 (Tenn. 2018).

## Analysis

The General Assembly enacted the statutory cap on noneconomic damages as part of the Tennessee Civil Justice Act of 2011. *See* 2011 Tenn. Pub. Acts, ch. 510, §§ 1, 10. Specifically, Tennessee Code Annotated section 29-39-102(a)(2) provides that, in a civil action, awards may include

> [c]ompensation for any noneconomic damages suffered by each injured plaintiff not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the action is based on a single act or omission or a series of acts or omissions that allegedly caused the injuries or death.

The cap is increased to $1,000,000 for certain "catastrophic loss or injury." Tenn. Code Ann. §§ 29-39-102(c)-(d). The statute also exempts certain kinds of cases from the cap, such as those in which the defendant had a specific intent to inflict serious physical

- 4 -

injury, the defendant was intoxicated, or the defendant committed a felony in causing the injury. Tenn. Code Ann. § 29-39-102(h). None of those exemptions is at issue in this case. The statute was enacted to apply prospectively to actions that accrue on or after October 1, 2011. See 2011 Tenn. Pub. Acts, ch. 510, § 24.

Plaintiff, having obtained a judgment of noneconomic damages in excess of the statutory cap, argues that the statutory cap is unconstitutional, and thus unenforceable. More specifically, Plaintiff argues that, under the Tennessee Constitution, the statutory cap violates the right to trial by jury, the doctrine of separation of powers, and discriminates disproportionately against women in violation of equal protection guarantees. We address each of these arguments in turn.[1]

### A. Whether Tennessee's Statutory Cap on Noneconomic Damages Violates a Plaintiff's Right to Trial by Jury.

First, Plaintiff contends that the statutory cap violates the Plaintiff's right to trial by jury. The right to a jury trial in Tennessee is expressly guaranteed by Article 1, Section 6, of the Tennessee Constitution, which mandates that "the right of trial by jury shall remain inviolate[.]" We have explained that this provision guarantees the right to trial by jury as it existed at common law under the laws and constitution of North Carolina at the time of the adoption of the Tennessee Constitution of 1796. Young v. City of La Follette, 479 S.W.3d 785, 793 (Tenn. 2015) (citing Helms v. Tenn. Dep't of Safety, 987 S.W.2d 545, 547 (Tenn.1999); Patten v. State, 426 S.W.2d 503, 506 (Tenn. 1968)). We further have held that "[t]he right to a jury trial envisions that all contested factual issues will be decided by jurors who are unbiased and impartial." State v. Smith, 418 S.W.3d 38, 45 (Tenn. 2013) (citing Ricketts v. Carter, 918 S.W.2d 419, 421 (Tenn. 1996); Wolf v. Sundquist, 955 S.W.2d 626, 629 (Tenn. Ct. App. 1997)). We also have long-recognized that the ascertainment of damages is a question of fact for the jury. See Spence v. Allstate Ins. Co., 883 S.W.2d 586, 594 (Tenn. 1994) (jury's determination of damages is a question of fact); Fort v. Orndoff, 54 Tenn. 167, 173 (Tenn. 1872) (the ascertainment of damages was a question of fact "eminently proper to be ascertained by [the] jury"). We assume for purposes of this opinion that noneconomic damages were available at the time of the adoption of the Tennessee Constitution.[2] Thus, we also

---

[1] We note that the statutory cap on noneconomic damages was enacted to apply prospectively and thus raises no issues regarding constitutional prohibitions against retrospective laws.

[2] The parties vigorously disputed this issue in this case. We conclude that the resolution of this issue is not material to the resolution of this case.

assume that a plaintiff has the right to an unbiased and impartial jury to decide, as a question of fact, the amount of any noneconomic damages sustained by the plaintiff. We now turn to what restrictions, if any, the General Assembly may place on the ability of a plaintiff to recover noneconomic damages.

As an initial matter, we recognize that it is within our General Assembly's authority to legislatively alter the common law. See Mills v. Wong, 155 S.W.3d 916, 923 (Tenn. 2005) ("The Tennessee General Assembly itself has the power to weigh and to balance competing public and private interests in order to place reasonable limitations on rights of action in tort which it also has the power to create or to abolish."); Heirs of Ellis v. Estate of Ellis, 71 S.W.3d 705, 712 (Tenn. 2002) (stating that "the General Assembly unquestionably has the constitutional and legislative authority to change the common law of this state"); Wooley v. Parker, 432 S.W.2d 882, 884 (Tenn. 1968) (explaining that "the Legislature of the State for obvious reasons sets the public policy of the State by their Acts, and we have held time and time again that the common law is applicable in Tennessee unless the Legislature enacts a statute otherwise"). Indeed, there are numerous examples of the General Assembly altering common law causes of action and available remedies. For example, in Lavin v. Jordon, 16 S.W.3d 362, 363 (Tenn. 2000), we held that the common law tort of negligent control and supervision of a child had been superseded by statute when the damage caused by the child was intentional or malicious. As a result, damages against parents in such actions are now limited by a statutory cap that provides "[t]he recovery shall be limited to the actual damages in an amount not to exceed ten thousand dollars ($10,000) in addition to taxable court costs." Id. at 365 (quoting Tenn. Code Ann. § 37-10-102).[3] In Lavin, we expressed our "distaste" for the result compelled by the statute, which prevents plaintiffs with damages exceeding the cap from being made whole, but acknowledged that it was within the legislature's authority to enact such legislation.[4] Id. at 369. The General Assembly also has expressly abrogated

---

[3] In her dissent, Justice Lee states that "[t]he statute in Lavin, therefore, gave tort victims something that had not existed at common law, so the right to trial by jury that accompanies a common law action was never implicated." Respectfully, we disagree. In fact, the Lavin Court *specifically* held that

> [b]ecause the General Assembly sought to regulate by statute that which was already governed by common law, and because a conflict exists with respect to damages between the parental liability statute and the common law, we must hold that the statute prevails over the common law and that damages in this case are capped at $10,000.

[4] In her dissent, Justice Clark contends that Lavin is distinguishable because it did not involve a challenge to the constitutionality of the statutory cap. In fact, we do not rely on Lavin for that proposition. Instead, we have cited Lavin because it is highly persuasive on the issue of the General Assembly's authority to alter the common law, given that the Lavin Court specifically held that a

common law causes of action, including alienation of affections, seduction, and criminal conversation. Tenn. Code Ann. § 36-3-701 ("The common law tort action of alienation of affections is hereby abolished."); Tenn. Code Ann. § 39-13-508(a) ("No cause of action shall be maintained that is based upon the common law torts of seduction or criminal conversation, and those torts are abolished."). This Court has recognized that the abrogation of those causes of action was within the General Assembly's authority and represented the legislative expression of the public policy of the state. See Hanover v. Ruch, 809 S.W.2d 893, 895 (Tenn. 1991); Dupuis v. Hand, 814 S.W.2d 340, 346 (Tenn. 1991). Here, one could view the statutory cap on noneconomic damages as a limitation on the available remedy for certain causes of action, or as an abrogation of causes of action for claims exceeding the statutory limit. Under either view, the General Assembly was within its legislative authority to alter the common law by enacting the statutory cap on noneconomic damages. Of course, the General Assembly may only exercise its authority to alter the common law within constitutional limits. See Hodge v. Craig, 382 S.W.3d 325, 338 (Tenn. 2012) (stating that it is "beyond reasoned argument that the General Assembly, subject only to constitutional limitations, has plenary power to alter the common law"); Lavin, 16 S.W.3d at 368 (stating that "the General Assembly has plenary power within constitutional limits to change the common law by statute"). Thus, we further examine whether, by enacting the statutory cap on noneconomic damages, the General Assembly has interfered with the constitutional right to trial by jury.

As set forth above, the right to a jury trial mandates that all contested factual issues be decided by an unbiased and impartial jury. Smith, 418 S.W.3d at 45. However, the right to a jury trial under the Tennessee Constitution does not entitle a plaintiff to any particular cause of action or any particular remedy. Instead, what causes of action a plaintiff may bring, or what remedies a plaintiff may seek, are matters of law subject to determination by the legislature.[5] Hopkins v. Nashville, C. & St. L. R. R., 34 S.W. 1029,

---

common law tort had been superseded by a statute including a damages cap. As the Lavin Court made clear, this by no means should be interpreted as our agreement with the public policy choice adopted by the General Assembly. See Lavin, 16 S.W.3d at 369.

[5] Both dissents rely upon our decision in Borne v. Celadon Trucking Services, Inc., 532 S.W.3d 274 (2017), for the proposition that a plaintiff must consent to a reduction of a jury verdict to avoid a violation of the constitutional right to a jury trial if one is suggested by the trial court. We did so hold in Borne. However, the dissents then make the leap to apply this reasoning to the statutory caps adopted by the legislature. This fails to recognize the critical distinction of the lack of authority of a trial judge to alter the common law as opposed to the General Assembly expressly having that authority. See Mills, 155 S.W.3d at 923. Moreover, the dissents' position fails to recognize the distinction between a trial judge suggesting an additur or remittitur because the trial judge disagrees with the reasonableness of the

1040 (Tenn. 1896) ("The rights of parties must be determined according to the established law of the land as declared by the legislature or expounded by the courts, and not according to what the jury, in their own opinion, may suppose the law is or ought to be[.]") (quoting Whirley v. Whiteman, 38 Tenn. 610 (Tenn. 1858)); Collins v. E. Tenn., V. & G. R. Co., 56 Tenn. 841, 847 (Tenn. 1874) ("The State has complete control over the remedies of its citizens in the Courts. It may give a new and additional remedy for a right already in existence--or may abolish old and substitute new remedies. It may modify an existing remedy[.]").

Under Tennessee Code Annotated section 29-39-102(g), the statutory cap on noneconomic damages is not disclosed to the jury, but is instead applied by the trial court to any award of noneconomic damages. Thus, a jury determines, as a question of fact, the amount of any noneconomic damages sustained by a plaintiff. The trial judge then applies, as a matter of law determined by the legislature, the statutory cap on noneconomic damages in entering the final judgment. This application of law by the trial judge does not violate the plaintiff's right to have a jury determine the underlying facts of the case. In reaching this conclusion, we find persuasive the reasoning from many of our sister states that have similarly concluded a variety of statutory caps on damages do not violate a plaintiff's right to trial by jury. In Murphy v. Edmonds, 325 Md. 342, 374 (Md. 1992), Maryland's highest court held that a statutory cap on noneconomic damages did not violate the right to a jury trial. The court reasoned that "[a] remedy is a matter of law, not a matter of fact . . . . A trial court applies the remedy's limitation only after the jury has fulfilled its fact-finding function. Thus, [the statutory cap] does not infringe upon the right to a jury trial[.]" Id. (quoting Etheridge v. Med. Ctr. Hosps., 376 S.E. 2d 525, 529 (Va. 1989)). The Supreme Court of Idaho similarly held in Kirkland v. Blaine County Medical Center, 4 P.3d 1115, 1120 (Idaho 2000), that a statutory cap on noneconomic damages did not violate the right to a jury trial, explaining that "[t]he jury is still allowed to act as the fact finder in personal injury cases. The statute simply limits the legal consequences of the jury's finding." The court went on to explain that the plaintiffs "had a jury trial during which they were entitled to present all of their claims and evidence to the jury and have the jury render a verdict based on that evidence. That is all to which the right to jury entitles them. The legal consequences and effect of a jury's verdict are a matter for the legislature (by passing laws) and the courts (by applying those laws to the facts as found by the jury)." Id. The Supreme Court of Ohio in Arbino v. Johnson & Johnson, 880 N.E.2d 420, 431 (Ohio 2007), also upheld a statutory cap on noneconomic damages, stating that

---

jury's assessment of damages based on the evidence presented and the application of a statutory cap on damages as a matter of law.

- 8 -

[s]o long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings, awards may be altered <u>as a matter of law</u>. There is no dispute that the right to a trial by jury does not extend to the determination of questions of law. . . . Thus, without violating the Constitution, a court may apply the law to the facts determined by a jury.

See also <u>Evans ex rel. Kutch v. State</u>, 56 P.3d 1046, 1051 (Alaska 2002) (agreeing with the Third Circuit Court of Appeals "that a damages cap did not intrude on the jury's fact-finding function, because the cap was a 'policy decision' applied after the jury's determination, and did not constitute a re-examination of the factual question of damages.") (citing <u>Davis v. Omitowoju</u>, 883 F.2d 1155, 1159-65 (3d Cir.1989)); <u>Horton v. Or. Health & Sci. Univ.</u>, 376 P.3d 998, 1046 (Ore. 2016) ("In applying the statutory limit on damages . . . the court was applying a legal limit, expressed in the statute, to the facts that the jury had found."); <u>Gourley ex rel. Gourley v. Neb. Methodist Health Sys.,Inc.</u>, 663 N.W.2d 43, 75 (Neb. 2003) (holding statutory cap on damages does not violate right to a jury trial because the legislature "has the power to limit recovery in a cause of action" and "the trial court applies the remedy's limitation only after the jury has fulfilled its factfinding function"); <u>Tam v. Eighth Jud. Dist. Court</u>, 358 P.3d 234, 236 (Nev. 2015) (explaining that the "cap does not interfere with the jury's factual findings because it takes effect only after the jury has made its assessment of damages, and thus, it does not implicate a plaintiffs right to a jury trial"); <u>Judd ex rel. Montgomery v. Drezga</u>, 103 P.3d 135, 144 (Utah 2004) ("The damage cap enacted by the legislature represents law, similar to an element of a claim to which the trial court must comport the jury's factual determinations."); <u>Wright v. Colleton Cnty. Sch. Dist.</u>, 391 S.E.2d 564, 569-70 (S.C. 1990) ("A remedy is a matter of law, not a matter of fact. Although a party has the right to have a jury assess his damages, he has no right to have a jury dictate through an award, the legal consequences of its assessments."); <u>Phillips v. Mirac, Inc.</u>, 685 N.W.2d 174, 183 (Mich. 2004) ("Plaintiff's right to a jury trial is not implicated. She has had a jury trial and the jury determined the facts of her case. The jury's function is complete. It is up to the court to determine the legal effect of those findings, whether it be that her damages are capped, reduced, increased, tripled, reduced to present value, or completely unavailable.").

We conclude that the right to trial by jury under the Tennessee Constitution is satisfied when an unbiased and impartial jury makes a factual determination regarding the amount of noneconomic damages, if any, sustained by the plaintiff. That right is not violated when a judge then applies, as a matter of law, the statutory cap on noneconomic

damages. Thus, we hold that the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102 does not violate the right to trial by jury under the Tennessee Constitution.[6]

### B. Whether Tennessee's Statutory Cap on Noneconomic Damages Violates the Separation of Powers Doctrine.

Second, Plaintiff argues that the statutory cap violates the separation of powers provisions of the Tennessee Constitution. Article II, section 1 of the Tennessee Constitution provides that "[t]he powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Section 2 of the same Article provides that "[n]o person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." "In general, the 'legislative power' is the authority to make, order, and repeal law; the 'executive power' is the authority to administer and enforce the law; and the 'judicial power' is the authority to interpret and apply law." Bredesen v. Tenn. Judicial Selection Comm'n, 214 S.W.3d 419, 434 (Tenn. 2007)

---

[6] While the instant case involves the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102, we acknowledge that the United State Court of Appeals for the Sixth Circuit in Lindenberg v. Jackson National Life Insurance Company, 912 F.3d 348 (6th Cir. 2018), held that the statutory cap on punitive damages in Tennessee Code Annotated section 29-39-104 violates the right to a jury trial under the Tennessee Constitution. As a preliminary matter, we note that decisions by federal circuit court of appeals are not binding on this Court. Frazier v. E. Tenn. Baptist Hosp., Inc., 55 S.W.3d 925, 928 (Tenn. 2001). We also find the reasoning of the majority in Lindenberg unpersuasive in this case. Moreover, in Lindenberg, we declined to accept a certified question from the federal district court regarding the constitutionality of the statutory cap on punitive damages because antecedent questions regarding the availability of those damages had not also been certified. Lindenberg v. Jackson Nat'l Life Ins. Co., No. M2015-02349-SC-R23-CV (Tenn. June 23, 2016) (per curiam). In our order declining to answer the certified questions, we stated: "Nothing in the Court's Order is intended to suggest any predisposition by the Court with respect to the United States Court of Appeals for the Sixth Circuit's possible certification to this Court of both the question of the availability of the remedy of common law punitive damages in addition to the remedy of the statutory bad faith penalty and the question of the constitutionality of the statutory caps on punitive damages, in the event of an appeal from the final judgment in this case." Id. The Sixth Circuit majority, however, chose not to certify such questions to this Court, and, instead, held that the statutory cap on punitive damages violates the right to trial by jury under the Tennessee Constitution. We simply point out that the procedure for certifying questions of state law to this Court is designed to promote judicial efficiency and comity, and to protect this State's sovereignty. See Yardley, 470 S.W.3d at 803; see also Lindenberg, 912 F.3d at 371-72 (observing that the constitutionality of the punitive damages cap is an unsettled question on which there is no Tennessee Supreme Court authority and is ideally suited for certification) (Larson, J., dissenting). However, we note that the statutory cap on punitive damages in Tennessee Code Annotated section 29-39-104 is not at issue in this case, and we express no opinion on this issue.

(quoting State v. King, 973 S.W.2d 586, 588 (Tenn.1998)); see also Richardson v. Tenn. Bd. of Dentistry, 913 S.W.2d 446, 453 (Tenn. 1995).  We have recognized, however, that "while the three branches of government are independent and co-equal, they are to a degree interdependent as well, with the functions of one branch often overlapping that of another."  Bredesen, 214 S.W.3d at 434 (quoting King, 973 S.W.2d at 588).

We have further explained that this Court alone "has the inherent power to promulgate rules governing the practice and procedure of the courts of this state," which "cannot be constitutionally exercised by any other branch of government."  State v. Lowe, 552 S.W.3d 842, 857 (Tenn. 2018) (quoting State v. Mallard, 40 S.W.3d 473, 480-81 (Tenn. 2001)).  Thus, this Court previously has held that the General Assembly oversteps constitutional boundaries in violation of the separation of powers when it exercises its legislative power in a way that directly contradicts existing procedural rules of the courts.  Lowe, 552 S.W.3d at 857.  However, the separation of powers doctrine in our constitution does not prevent the Generally Assembly from enacting substantive law.  See Bredesen, 214 S.W.3d at 434 (legislative power is the authority to make, order, and repeal law); see also Zdrojewski v. Murphy, 657 N.W.2d 721, (Mich. Ct. App. 2002) (holding statutory cap on noneconomic damages did not violate separation of powers because it was a substantive change in the law that did not regulate the procedural operations of the judiciary); Gourley, 663 N.W.2d at 76 (holding statutory cap on damages was a proper legislative function that did not violate separation of powers); Judd, 103 P.3d at 144 (holding statutory cap on damages represented the law to be applied and did not violate separation of powers).

As we discussed supra, the statutory cap on noneconomic damages is a substantive change in the law that was within the General Assembly's legislative authority to enact.  The statutory cap does not interfere with the judicial power of the courts to interpret and apply law.  To the contrary, courts exercise their judicial authority, and fulfill their constitutional responsibilities, by applying the statutory cap on noneconomic damages to the cases before them.  Thus, we hold that the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102 does not violate the separation of powers doctrine under the Tennessee Constitution.

### C. Whether Tennessee's Statutory Cap on Noneconomic Damages Violates the Equal Protection Clause by Discriminating Disproportionately Against Women.

Finally, Plaintiff contends that the statutory cap violates the equal protection provision of the Tennessee Constitution.  The right to equal protection is guaranteed by the Fourteenth Amendment of the United States Constitution.  Equal protection also is

guaranteed by Article I, section 8, and Article XI, section 8, of the Tennessee Constitution. We have held that the Tennessee and United States Constitutions confer essentially the same protections, and we have followed the framework developed by the United States Supreme Court for analyzing equal protection claims. Tenn. Small Sch. Sys. v. McWherter, 851 S.W.2d 139, 152 (Tenn. 1993) ("[T]he Court has stated in previous decisions that Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the Constitution of the United States confer essentially the same protection upon the individuals subject to those provisions.") (citing Marion Cnty. Tenn. River Transp. Co. v. Stokes, 117 S.W.2d 740, 741 (1938); Motlow v. State, 145 S.W. 177, 180 (1912)); Newton v. Cox, 878 S.W.2d 105, 109 (Tenn. 1994) ("[T]his Court has followed the framework developed by the United States Supreme Court for analyzing equal protection claims[.]"). "The concept of equal protection espoused by the federal and of our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" Doe v. Norris, 751 S.W.2d 834, 841 (Tenn. 1988) (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)).

Here, Plaintiff acknowledges that the statutory cap on noneconomic damages is facially neutral, and she makes no allegation that the General Assembly had a discriminatory intent or purpose in enacting the statute. Instead, Plaintiff simply argues that the statutory cap on noneconomic damages has a disparate impact on women. The United States Supreme Court has held repeatedly that the Equal Protection Clause of the Federal Constitution does not provide for disparate impact claims. See Washington v. Davis, 426 U.S. 229, 242 (1976) (holding that disproportionate impact, standing alone, does not violate the Equal Protection Clause); Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-65, (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause[.]"); Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 273 (1979) (holding that "the Fourteenth Amendment guarantees equal laws, not equal results"); Lewis v. Casey, 518 U.S. 343, 375 (1996) ("We rejected a disparate-impact theory of the Equal Protection Clause altogether in Washington v. Davis . . . .") (Thomas, J., concurring); Coleman v. Court of Appeals of Maryland, 566 U.S. 30, 42 (2012) (recognizing that disparate impact alone is insufficient to prove a constitutional violation). We similarly have held that a party asserting an equal protection violation must show discriminatory purpose. See State v. Banks, 271 S.W.3d 90, 155 (Tenn. 2008) (holding a defendant in a criminal proceeding who asserts an equal protection violation must prove the existence of purposeful discrimination) (citing Arlington Heights, 429 U.S. at 165-66)); State v. Keen, 31 S.W.3d 196, 217 (Tenn. 2000) (same). Accordingly,

- 12 -

without evidence of discriminatory purpose, disparate impact alone does not violate the equal protection provisions of the Tennessee Constitution. Therefore, with no allegation or evidence that the General Assembly acted with the purpose of discriminating against women in enacting the statutory cap on noneconomic damages, we hold that Tennessee Code Annotated section 29-39-102 does not violate the Tennessee Constitution by discriminating disproportionately against women.[7]

## **Conclusion**

We hold that the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102 does not violate the right to trial by jury, the doctrine of separation of powers, or the equal protection provisions of the Tennessee Constitution.

The Clerk is directed to transmit a copy of this opinion to the United States District Court for the Middle District of Tennessee in accordance with Tennessee Supreme Court Rule 23, section 8. Costs in this Court are taxed to Plaintiff Jodi McClay, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[7] Because we hold that a disparate impact, without evidence of discriminatory purpose, is not cognizable under the equal protection provisions of the Tennessee Constitution, we need not examine the veracity of Plaintiff's disparate impact allegations. We note, however, that Plaintiff has done little more than reference a 2004 law journal article regarding tort reform, and has provided no evidence that Tennessee's statutory cap on noneconomic damages has a disparate impact on women in Tennessee.